## THE PEOPLE *v.* MAXWELL.

WHAT CONSTITUTES LARCENY.—One who does not participate in a larceny, or have any knowledge of it whatever prior to or at the time of its commission, but afterwards receives the stolen goods into his possession, does not thereby become guilty of a larceny.

INSTRUCTIONS IN CRIMINAL CASES.—Any instruction in a criminal case which is so ambiguous that conclusions clearly prejudicial to the defendant may be drawn therefrom by the jury, is erroneous.

APPEAL from the Court of Sessions, Placer County.

The defendant was convicted of the crime of larceny, and appealed.

The other facts are stated in the opinion of the Court.

*Tuttle & Fellows*, for Appellant.

*McCullough*, Attorney-General, for Respondent.

The Court did not err in refusing defendent a new trial, on the ground that the instruction of the Court was contrary to the rule laid down in criminal proceedings. (Wharton's Cr. Law, §§ 1814–15–17; 2d East's Pleas of the Crown, 767–9.)

By the Court, SANDERSON, C. J.

The defendant and one Morgan were jointly indicted for the crime of grand larceny, and, upon their application, were allowed separate trials. It appears from the testimony on the part of the prosecution, that the stolen property, consist-

ing of a rifle, vest, razor, shot pouch, and shirt, was taken from the cabin of the prosecutor, near Auburn Station, in Placer County, during his absence, on the 30th day of December, A. D. 1862. No one was seen to take it, nor was the defendant or Morgan seen in the vicinity of the cabin on that day. About dusk of the same day, they were seen travelling in company, at the North Fork bridge, several miles from Auburn Station, the defendant carrying a gun upon his shoulder. They passed the night at a hotel about five miles beyond the bridge, and on the next day proceeded on to Forest Hill. When they arrived at this place Morgan had the gun in his possession, and gave it in pledge to the landlord of the hotel at which they stopped, as security for their board and lodging. At this hotel both parties were arrested. From the testimony of the officer who made the arrest, it appears that all the stolen property was found in the possession of Morgan, except the gun, which was in the possession of the landlord. Morgan, who was examined as a witness on the part of the defence, testified that he and the defendant left San Francisco in company, to go to the mines; that the road forked a few miles from Auburn, and, by mistake, they took the road leading to Auburn Station, and had nearly reached that place before they were informed of their error; that he then told Maxwell that he would go by the station, as it was not much out of the way; that he and the defendant then separated. The defendant went across the country in the direction of the Auburn road, while he took the route by the station ; that on his way he went to the cabin of the prosecutor, and committed the larceny in question ; that when he overtook the defendant he told him, in response to an inquiry as to where he got the gun, that he had found a friend at the station, who thought he might have use for it in the mountains, and had given it to him; that he alone committed the larceny, and without the participation or knowledge of the defendant, who knew nothing

about it until after their arrest. Such being the facts, the following instruction, among others, was given to the jury by the Court: "Should you believe, from the evidence, that the witness Morgan stole the property described in the indictment, and that the same was found in the possession of this defendant, and that this defendant and Morgan were associated together, and that the defendant knew that the property was stolen, then and in that case he is equally guilty in the eye of the law, and your verdict should be guilty." This instruction is assigned as error.

It is contended that this instruction was calculated to confuse and mislead the jury; and as the language here used seems to be unqualified by any other portion of the charge, we are inclined to the opinion that such may have been the case. It is difficult to say that the language used is not quite as applicable to a case where the offence charged is receiving stolen goods as to a case of larceny, and the jury, not knowing or clearly understanding the distinction between the two offences, may have confounded them, and come to the conclusion that the defendant, having received a part of the stolen goods into his possession, knowing them to be stolen, by that act alone became guilty of larceny, although he may not have participated in the larceny, or had any knowledge of it whatever prior to or at the time of its commission.

The charge is also objectionable on account of the loose use of the words "*were associated together.*" It is impossible to determine clearly what meaning was intended to be conveyed by these words, and the jury may have inferred from their unqualified use, that if Morgan and the defendant were associated together *in any manner*, and Morgan committed the larceny in question, and the defendant afterward knew that Morgan had stolen the property, he would be equally guilty with Morgan. Any instruction in a criminal case which is so ambiguous that conclusions

clearly prejudicial to the defendant may be drawn there-from by the jury, must be held erroneous by this Court.

The judgment is reversed and a new trial ordered.

CURREY, J., expressed no opinion.