[No. 20876.   In Bank.— March 28, 1892.]

THE PEOPLE, RESPONDENT, *v.* JAMES W. SMALL-
ING, APPELLANT.

CRIMINAL LAW — EVIDENCE — VOLUNTARY CONFESSION. — A confession,
freely and voluntarily made, is not rendered immaterial or incompetent
as evidence against the defendant in a criminal prosecution from the
fact that the defendant's sister was also under arrest for the commission
of the crime, and the confession may have been made to free her from
the suspicion of guilt.

ID. — ADMISSION OF CONFESSION. — The admission in evidence of a writ-
ten confession of the defendant is without prejudice, if another witness
and the defendant himself, when a witness in his own behalf, testify to
substantially the same facts as those contained in the confession.

ID. — ONCE IN JEOPARDY — FAILURE TO RENDER VERDICT. — Where a de-
fendant in a criminal prosecution has once been placed on trial, on a
valid information, before a legal jury, and in a court of competent juris-
diction, he has been placed in jeopardy, and is forever protected from a
second prosecution for the same offense, unless the jury was prevented
from rendering a verdict by some legal necessity.

ID. — FAILURE TO AGREE UPON VERDICT — DISCHARGE OF JURY. — The in-
ability of the jury to agree upon a verdict is one of those necessities
that will authorize the court to discharge the jury, and thereby subject
the defendant to a second trial.

ID. — ERRONEOUS DISCHARGE OF JURY — IMPEACHMENT OF RECORD. — The
defendant, on a second trial for the same offense, in order to support his
plea of once in jeopardy, cannot impeach the record of the first trial by
extrinsic evidence of facts showing an erroneous exercise of judicial
discretion in discharging the jury on the ground that there was no rea-
sonable probability of their agreeing.

ID. — ABSENCE OF DEFENDANT AT TIME OF DISCHARGE OF JURY. — The
fact that the defendant was not present at the time the jury was dis-
charged, his presence having been waived by his counsel, does not affect
the question of his jeopardy, as his objection to the discharge of the
jury at that time could not have defeated the validity of the court's
action.

ID. — RECORDING AND DECLARING VERDICT — IRREGULARITY WITHOUT
PREJUDICE. — In a prosecution for murder, when the jury were about
to retire, the court handed them forms of verdicts as to the pleas of
former acquittal, former conviction, and once in jeopardy, and instructed
them to find for the people thereon. Upon the return of the jury, the
foreman declared the verdict to be, guilty of murder. The clerk read
the verdict to the jury as recorded, and asked them if that was their
verdict, and they all responded, "Yes." The foreman also handed to
the court their verdicts on the three special pleas. The court then, in
the presence of the jury, stated that these verdicts were in favor of the
people, and asked the counsel for the defendant whether they insisted
upon having them then entered by the clerk before the jury were dis-
charged, and read to them, and have them declared whether they were

their verdicts.  The counsel for the defendant having waived the then recording of these verdicts, the jury were discharged, and the verdicts were recorded afterwards.  *Held*, that the requirements of sections 1149 and 1164 of the Penal Code, as to the manner of declaring and recording the verdicts, had not been complied with, but that the irregularity was without prejudice.

APPEAL from a judgment of the Superior Court of Calaveras County.

The facts are stated in the opinion of the court.

*J. G. Swinnerton, Swinnerton & Rutherford,* and *Paul C. Morf,* for Appellant.

*Attorney-General Hart, Deputy Attorney-General Layson, Ira Hill Reed,* and *F. J. Solinsky,* for Respondent.

GAROUTTE, J. — The appellant was convicted of murder in the first degree, with punishment fixed at imprisonment for life, and now appeals from the judgment. For a reversal of the judgment he relies upon the following assigned errors of law: 1. The court erred in admitting in evidence the written confession of defendant, under objection; 2. The court erred in excluding exhibit B from the jury, it being the evidence of what occurred on the discharge of the jury at the first trial of the action, and in sustaining the people's objection thereto; 3. The court erred in denying defendant's motion to be discharged from custody, and in pronouncing judgment on said defendant; 4. The court erred in instructing the jury to find for the people upon the pleas of former acquittal, former conviction, and former jeopardy.

The confession of the defendant was clearly admissible. It appears to have been an entirely free and voluntary statement. The fact that defendant's sister was also under arrest for the commission of the homicide, and that the confession may have been made to free her from suspicion of guilt, is a matter that in no way tends to invalidate it as material and competent evidence. Again, this sister testified at the trial that immediately

subsequent to the commission of the homicide defendant acknowledged to her the facts of the killing, and the facts as stated by her were substantially the same as contained in the written confession admitted in evidence. In his defense, the defendant went upon the witness-stand, and again stated, with additional matters, every fact contained in the said confession. Thus, from any and every stand-point of the case, we conclude the assignment of error not well taken.

It is claimed that the court erred in excluding exhibit B as evidence in the case. Exhibit B was that portion of the transcript of the proceedings of the previous trial, taken by the phonographic reporter, showing what occurred at the time the jury were discharged by the court for the reason that they were unable to agree upon a verdict.

When this case was called for trial, counsel for defendant announced themselves as not ready, by reason of the absence of one Hood, the party who acted as short-hand reporter at the previous trial, but suggested that if the district attorney would stipulate to admit the certified copy of the reporter's notes in evidence in lieu of the presence of the reporter, they were ready to proceed. The district attorney agreed to admit the transcript, to wit, exhibit B, in evidence, whereupon the trial proceeded. When defendant attempted to introduce the exhibit in evidence, counsel for the people waived the objection that it was not the best evidence, but objected, upon the ground that it was irrelevant, immaterial, and incompetent, and the court sustained the objection. We will not enter into a discussion as to the effect of the stipulation, or as to the professional proprieties which should exist among attorneys in carrying out stipulations made in good faith.

If the evidence was improperly rejected, but the defendant was not prejudiced thereby, it was not material error; or if the evidence had been admitted before the jury, and could not have affected the character of the verdict, then a violation of the stipulation, if it occurred, did the defendant no injury.

In addition to the plea of not guilty, the defendant entered the plea of prior acquittal, prior conviction, and once in jeopardy, and depended upon the proceedings of the first trial for the facts to support such pleas.   The jeopardy relied upon by defendant is insisted to have attached by reason of the fact that at such trial the jury were discharged without legal necessity, and also discharged in the absence of the defendant.   The records of the court were introduced, which showed that the defendant had once been placed on his trial for the same offense, on a valid information, before a legal jury, and in a court of competent jurisdiction.   (*People* v. *Webb*, 38 Cal. 467; *People* v. *Hunckeler*, 48 Cal. 334.)   This jeopardy, once having attached, was a shield forever protecting the defendant from a second prosecution, unless the jury was prevented from rendering a verdict from some legal necessity.   It cannot be questioned but that the inability of a jury to agree upon a verdict is one of those necessities that will authorize a court to discharge the jury, and thereby subject the defendant to a second trial. At the time exhibit B was offered in evidence, the record of the previous trial had been placed before the jury, and one of the recitals thereof was as follows: "At eleven o'clock and fifteen minutes, P. M., the jury came into court.   Present: Hon. C. V. Gottschalk, judge; Ira Hill Reed, district attorney; Ben K. Thorn, sheriff; A. L. Kyllie, clerk, by Sam E. Redmond, deputy clerk; reporter, E. E. Hood; and defendant's attorneys, J. G. Swinnerton and Paul C. Morf, defendant's presence in court being waived by his said attorneys.   Roll-call of jurors, all found present.   The jury were asked by the court if they had agreed upon a verdict, and they replied that they had not.   The court, after questioning each one of the jurors as to the probability of their agreeing upon a verdict, and being satisfied that there is no reasonable probability of the jury so agreeing, orders the jury discharged from further consideration of the case." Exhibit B contained a transcript of the proceedings occurring in court at the time the jury were discharged,

showing the examination of the jurors by the court as to the probability of arriving at a verdict, and it was offered for the purpose of showing by the answers of the jurors that there was a probability of agreement. Its purpose was necessarily to impeach the recitals of the record and show a gross abuse of discretion in discharging the jury under the circumstances there indicated. A defendant is not entitled to impeach the record by extrinsic evidence of facts showing an erroneous exercise of judicial discretion in discharging a jury. He is bound by the judgment of the court as declared by the record. In *United States* v. *Perez*, 9 Wheat. 580, Justice Story said: "We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would be defeated." In the case of *People* v. *Green*, 13 Wend. 57, Chief Justice Savage said: "The subject has been fully considered by this court in several cases, particularly in *People* v. *Olcott*, 2 Johns. Cas. 301, and *People* v. *Goodwin*, 18 Johns. 200. The rule was laid down by Mr. Justice Kent in the first of these cases, which was acquiesced in by Chief Justice Spencer in the last, that the question of discharging a jury is one which must rest in the sound discretion of the court. Either the court must determine when it is requisite to discharge, or the rule must be inflexible that after the jury are once sworn and discharged, no other jury can in any event be sworn and charged in the same case. The moment cases of necessity are admitted to form exceptions, that moment a door is open to the discretion of the court to judge of that necessity, and to determine what combination of circumstances will create one." In this case the jury were out but thirty minutes. In *People* v. *Harding*, 53 Mich. 487, Chief Justice Cooley, in speaking as to the power of the judge to discharge the jury without a verdict, said: "The whole subject, however, is referred to his judgment, and

when he decides no one can question his conclusion." Counsel relies upon the case of *Ex parte McLaughlin,* 41 Cal. 219, as authority to authorize a reversal of the judgment of the court upon the necessity for a discharge of the jury by extrinsic evidence. This case was heard upon the record alone, and the language used in the opinion as to the right of the appellate court to review the judgment of the trial court upon this question must be limited to a review of the facts as disclosed by the record; and especially does this appear when the entire opinion is carefully considered. It follows that the admission of exhibit B as evidence in this case would have resulted in no benefit to the defendant; for neither court nor jury could have considered it in passing upon the question of jeopardy. The record recital is full and complete, and clearly indicates the legal necessity contemplated in law to justify the discharge of a jury.

The fact that the defendant was not present at the time the jury was discharged, his presence having been waived by his counsel, does not affect the question of his jeopardy; for his objection to the discharge of the jury at that time could not have defeated the validity of the court's action. It follows that the defendant wholly failed to establish his special defense by any evidence, and under such circumstances it was the duty of the court to instruct the jury to find for the people thereon. (*Warners* v. *State,* 20 Tex. App. 109; *O'Connor* v. *State,* 28 Tex. App. 288.)

There remains but one additional assignment for consideration, and in a case of the importance of the present one, it is a matter of regret that occasion for it should ever have arisen. When the jury were about to retire to consult as to their verdict, the court handed them forms of verdicts as to the pleas of former acquittal, former conviction, and once in jeopardy, and instructed them to find for the people upon these pleas, and have their foreman sign and date them and return them into court, with their verdict upon the merits of the case. The jury, having retired, returned into court and announced that

they had agreed upon a verdict. The foreman declared the verdict to be guilty of murder in the first degree, and fixed the punishment at imprisonment for life. The clerk read the verdict to the jury as recorded, and asked them if that was their verdict, and they all responded, " It is." The bill of exceptions then recites: "The foreman also handed to the court three other verdicts, being the same verdicts heretofore set out and delivered to the jury, which verdicts were all signed by the foreman and properly dated." The court then said: " Now, I desire to know of the counsel in regard to these verdicts found by the jury, as to the defendant having been once acquitted of the offense charged, and having been once convicted of the offense charged, and having been once in jeopardy for the offense charged, whether or not it will be understood by counsel that these verdicts may be entered by the clerk subsequently, they having been brought in by the foreman in favor of the people under the instructions of the court, or whether they insist upon having those verdicts now entered by the clerk before the jury are discharged, and read to the jury, and have them declare whether these are the verdicts."

*Mr. Swinnerton.* — " We do not insist ˚on that, — the recording at this time."

*The Court.* — " The clerk may then record those verdicts afterwards. They were brought in under the instructions given to the jury."

The jury was then discharged. The jury did not orally declare, nor did their foreman nor any member of the jury read aloud, any verdict on the pleas of former acquittal, former conviction, or former jeopardy. Such verdicts were not read aloud to the jury by any person, nor was anything asked them to establish what verdict, if any, they had agreed upon as to the issues raised by such pleas. But counsel for defendant expressly waived the declaring and recording of said verdicts at the time, and agreed that they might be recorded afterwards, as appears in this bill of exceptions, and all the facts constituting such waivers are therein set forth."

Under section 1149 of the Penal Code, when the jury have returned into court, and announced that they have agreed upon a verdict, they are required, through their foreman, to declare such verdict; and under section 1164 of the code, when the verdict is so declared, and upon an examination by the court it appears to be correct in form, it must then be recorded, etc. In this case, these verdicts were declared by the jury through their foreman to be their verdict, when, in response to the interrogatory of the court, the foreman announced they had agreed upon a verdict, and handed these three verdicts to the court as their verdict upon these special pleas. The court then announced to the counsel, and in the presence of the jury, the contents of these verdicts, and necessarily each member of the jury knew what the verdicts in effect declared. Indeed, under the instructions of the court, the jury was not at liberty to bring in a verdict upon these pleas in any other form. After all these proceedings had taken place, defendant's counsel waived the recording of the verdict in the presence of the jury; and having made such waiver, he of necessity waived the declaration of the jury that it was their verdict, which the statute requires to be made subsequently to the record of the verdict. In the case of *People* v. *Gilbert*, 57 Cal. 96, there was no waiver, and the verdict was not recorded until after the jury had been discharged; and while the proceeding was irregular, the court decided, especially in the light of sections 1404 and 1258 of the Penal Code, that no error existed which would justify a reversal of the judgment. This principle of irregularity of procedure without prejudicial error was also recognized and approved in *People* v. *Sprague*, 53 Cal. 494.

Section 1404 reads: " Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

"Sec. 1258. After hearing the appeal, the court must give judgment without regard to technical errors or defect, or to exceptions, which do not affect the substantial rights of the parties."

The record clearly shows that irregularities existed in the manner in which these various verdicts were returned into court,— irregularities occasioned without necessity, and which could have been easily avoided. In cases of felony, and especially where a defendant is charged with the crime of murder, the only correct procedure is to adhere strictly to the statute. Any other course is a dangerous innovation, which generally results in a miscarriage of justice.

We think the irregularities here shown do not affect the validity of the judgment, and are such as come squarely within the provisions of the Penal Code cited.

Let the judgment be affirmed.

McFARLAND, J., HARRISON, J., PATERSON, J., DE HAVEN, J., and SHARPSTEIN, J., concurred.