[Crim. No. 94.   Third Appellate District.—October 5, 1909.]

THE PEOPLE, Respondent, v. E. DISPERATI, Appellant.

CRIMINAL LAW—GRAND LARCENY—SECOND TRIAL—PLEA OF ONCE IN
JEOPARDY—DISCHARGE OF JURY FOR FAILURE TO AGREE—SUFFI-
CIENCY OF RECORD.—Upon a second trial for grand larceny, a plea
of once in jeopardy on the ground of the discharge of the jury on
the first trial for failure to agree cannot be sustained, where the
record shows that they were unable to agree. The record is not
required to show that the court heard legal evidence, or tried any
issue, or found any fact, or stated the reasons for discharging the
jury.

ID.—STATEMENT BY JURORS OF INABILITY TO AGREE.—Where it appears
that the jurors stated their inability to agree, it cannot be said that
their statements were unworthy of belief; but it must be assumed
that the court was entirely satisfied that any further effort to
secure a verdict would be futile.

ID.—PRESUMPTIONS UPON APPEAL—BURDEN TO SHOW ERROR—PRESUMED
CONSENT TO DISCHARGE OF JURY.—Apart from the showing in the
minutes as to the failure of the jury to agree, in view of the pre-
sumption in favor of the regularity of the proceedings of courts of
record, and of the rule that the burden is upon the appellant to
show error affirmatively, it would be presumed in favor of the judg-
ment, when nothing appears in the record to the contrary, that the
defendant consented to the discharge of the jury.

ID.—DISMISSAL OF INFORMATION AFTER FAILURE TO AGREE—"FURTHER-
ANCE OF JUSTICE"—ANOTHER PROSECUTION NOT BARRED.—The dis-
missal of an information for a felony after the failure of the jury
to agree, where it is "in furtherance of justice," in pursuance of
section 1385 of the Penal Code, is not a bar to another prosecution
for the same offense, under the provisions of section 1387 of the
same code.

ID.—FAILURE OF TRIAL—CONSENT OF DEFENDANT TO DISMISSAL NOT RE-
QUIRED.—Although, where the defendant has been convicted under
a first information, it can only be set aside at his instance, and
would bar another prosecution if set aside without his consent, yet,
when there has been a failure of trial by disagreement of the jury,
the status is the same as if there had been no trial; and no con-
sent or act of the defendant is required to justify the court in
dismissing the information under section 1385 of the Penal Code.

ID.—"FURTHERANCE OF JUSTICE"—JUDICIAL DISCRETION.—Since the legis-
lature has not defined the expression "in furtherance of justice,"
as used in section 1385 of the Penal Code, it is left for judicial
discretion, exercised in view of the constitutional rights of the de-

fendant, and the interests of society to determine what particular grounds warrant the dismissal.

ID.—INSUFFICIENT GROUND—DEPLETION OF COUNTY TREASURY.—It is not a sufficient ground for the dismissal that a continuance of the action would deplete the county treasury. The right of a defendant charged with crime, to a speedy trial without unnecessary delay and embarrassment, is as urgent and important as that of a creditor of the county to have his just demands promptly paid.

ID.—STATEMENT OF "REASONS FOR DISMISSAL"—MANDATORY PROVISION —PLEA OF "ONCE IN JEOPARDY" SUSTAINABLE.—The requirement of section 1385 of the Penal Code, that "the reasons of the dismissal must be set forth in an order entered upon the minutes," is mandatory, and no substantial departure therefrom should be tolerated. When no reasons are so stated, a plea of "once in jeopardy," by virtue of the unlawful dismissal, is sustainable.

ID.—FORM OF PLEA OF "ONCE IN JEOPARDY"—SURPLUS STATEMENTS NOT VITIATING.—The fact that the plea of "once in jeopardy" goes beyond the requirement of subdivision 4 of section 1017 of the Penal Code, and sets forth all the facts including the times, places and courts in any way relating to the plea, and thereby sets forth more than the law demands, does not deprive the defendant of the right to have it considered.

ID.—OBJECTION TO ILLEGAL DISMISSAL NOT "TECHNICAL"—AUTHORITY OF LEGISLATURE.—The objection to the illegal dismissal for failure to state the reasons thereof in the minute order, is not "technical," but relates to an important rule of procedure established by the legislature; and it cannot be held harmless, without an invasion of the authority of the legislature, as a co-ordinate branch of the government.

ID.—ERROR IN INSTRUCTIONS—CONFUSING "GRAND LARCENY" WITH "RECEIVING STOLEN PROPERTY."—Where there was no evidence of the actual participation by the defendant in the original taking of the stolen property, and the offense of the defendant under the evidence may have been merely that of receiving stolen property, it was prejudicially erroneous to give instructions to the jury as to his conviction for grand larceny, which confuses that crime with the crime of receiving stolen property, and calls for his conviction, although presupposing that the larceny was committed by another person before defendant had guilty knowledge of the same or culpable connection with it, when he received the stolen property into his possession.

ID.—IMPROPER REFUSAL OF REQUESTED INSTRUCTION—ACQUITTAL ON PROOF ONLY OF DISTINCT OFFENSE.—An instruction requested by the defendant that if the jury "believe that the only part that defendant took in the alleged larceny was that he, after the said mules were stolen, aided or assisted the person who stole them, in selling or disposing of them, or participated in the profits thereof,

he cannot be convicted of grand larceny, and in such case you will acquit the defendant," states a correct principle of law, and should have been given.

ID.—SUGGESTION AS TO FURTHER PROSECUTION—RECEIVING STOLEN PROPERTY.—It appearing that the evidence of larceny by the defendant is slight, and that there is more evidence of the crime of receiving stolen property, it is suggested that if it be deemed advisable to prosecute the defendant for the latter offense, the former conviction of grand larceny would not be a bar to such prosecution.

APPEAL from a judgment of the Superior Court of Madera County and from an order denying a new trial. John G. Covert, Judge presiding.

The facts are stated in the opinion of the court.

Robert L. Hargrove, and George W. Mordecai, Jr., for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

BURNETT, J.—In a brief of exceptional merit it is earnestly contended by appellant that he has not had a fair trial. "Prejudiced," declare his counsel, "by the misinstructions of the court and by the court's refusal to give proper instructions and by the outrageous and villainous misconduct of a juror, the defendant was deprived of a just consideration of his case. The verdict is contrary to the evidence because there is no evidence that defendant abetted or advised anyone to steal. The verdict is contrary to the facts, because receiving or disposing of stolen property is not larceny. The verdict is contrary to law because the defendant has been once in jeopardy."

These various propositions are methodically presented with citation of numerous authorities. The consideration of some of the points discussed is deemed unnecessary, but the following we regard as of vital importance:

1. On December 18, 1907, Miller & Lux caused a complaint to be filed in the justice court against defendant, charging him with the larceny of four mules branded H̲H̲. On January 23, 1908, defendant was held to answer, and on the 30th following an information was filed in the superior court to, which a plea of not guilty was entered. On April 6, 1908, the

trial was begun. The jury disagreed and on April 10th it was discharged, the minutes of the court showing that they "came into court and state to the court that they are unable to agree upon a verdict and further state that it is impossible to ever reach a verdict, whereupon it is ordered by the court that they be and they are hereby discharged from further consideration in this case."

On June 5, 1908, the district attorney made an application for a dismissal of the information "in furtherance of justice as provided in section 1385 of the Penal Code." He submitted certain reasons for said application to the effect that sufficient time had not elapsed to secure the attendance of the necessary witnesses for the plaintiff, that disclosures had been coming to light indicating that defendant had an accomplice or accomplices in the crime, and that it was important that the investigations concerning the same be completed before the trial of the defendant, and that it was impossible to complete them before the expiration of sixty days from the former mistrial, that it would be opposed to the interests of justice to disclose at that time the matters being investigated tending to connect the defendant or his accomplices with other offenses, and that "the trial of this action will be very expensive and might burden the county general fund, that money due for other county expenses and contracts might thus be consumed, thereby causing *bona' fide* claimants to lose their legal rights to be paid out of the revenues of the current fiscal year." The court thereupon made the following order: "It is therefore ordered that the motion of the district attorney be and the same is hereby granted and order made as requested. It is further ordered that the information be and the same is hereby dismissed, the defendant discharged and bond exonerated."

On the same day another complaint was filed in the justice court charging the defendant with the same larceny. He was held to answer and another information was filed to which a plea of "once in jeopardy" and of not guilty were entered. The trial resulted in a verdict of guilty and for the people, under the direction of the court, on the plea of "once in jeopardy."

In support of his contention that he is entitled to the protection of article I, section 13, of the constitution, providing that "no person shall be twice put in jeopardy for the same

offense," it is insisted in the first place by appellant that jeopardy attached for the reason that the jury was discharged without legal consent, the rule being as stated in *People* v. *Webb,* 38 Cal. 477, "that when a party is once placed upon his trial for a public offense on a valid indictment, before a competent court with a competent jury, duly impaneled, sworn and *charged* with the case, he has then reached and is placed in the jeopardy, from a repetition of which, upon the same indictment, or any other indictment for the same offense, the constitutional shield forever protects him, and after the jeopardy has once so attached, a discharge of the jury, without the consent of the defendant, for any cause within the control of the court, before they have rendered a verdict is equivalent to a verdict of acquittal."

Appellant, however, admits that the jury may be discharged because of their inability to agree upon a verdict and jeopardy will not attach, but it is insisted that this rule can have no application here, for the reason that "The court did not hear any legal evidence or try the issue or make any finding on the question whether or not the jury could agree, but dismissed the jury summarily, on the same day of the submission of the cause, without the consent of the defendant." But it does appear that the jurors stated to the court that it was impossible for them to agree, and we cannot say that their statements were unworthy of belief. We must assume that the court was entirely satisfied that any further effort to secure a verdict would be futile. The statute does not provide just what proceeding shall be taken to determine the probability of an agreement, but no better method occurs to us than to obtain from the jurors an expression of their judgment, and the court, in the exercise of the discretion committed to it, may give such weight to this opinion as the surrounding circumstances seem to demand.

Again, although the jury should not be discharged until the court is satisfied that an agreement is not probable, still the law does not require an express finding by the court that the jury could not agree, and for that reason were discharged. Section 1140 of the Penal Code, the authority for the court's action, provides that "The jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict, and rendered it in open court . . . or unless at the expiration of such time as the court may deem proper,

it satisfactorily appears that there is no reasonable probability that the jury can agree.'' There is nothing therein requiring the court to state its reasons for discharging the jury and, in harmony with this provision, it is stated in *People* v. *Greene,* 100 Cal. 142, [34 Pac. 630] : ''The reasons upon which the court deems it proper to discharge the jury are not required to be placed on record; it is sufficient that it shows the jury were unable to agree.''

It may be remarked that the minutes introduced in evidence in the case at bar do sufficiently show that the jurors could not agree, although in view of the presumption as to the regularity of the proceedings of a court of record and of the rule imposing upon the appellant the burden of showing error affirmatively, since nothing appears to the contrary, it would be presumed, if necessary to support the judgment, that the defendant consented to the discharge of the jury.

A more serious question arises from the fact that the information was dismissed and the second trial was had upon another information based upon a new complaint in the justice court charging the same offense. The proceeding is quite unusual, and no doubt should be adopted only when substantial and exigent reasons seem to demand it. The attorney general seeks justification for the course pursued in section 1385 of the Penal Code, which provides that ''The court may either of its own motion or upon the application of the district attorney and in furtherance of justice order an action or indictment to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes.'' Section 1387 is : ''An order for the dismissal of the action as provided in this chapter is a bar to any other prosecution for the same offense, if it is a misdemeanor; but it is not a bar if the offense is a felony.''

In the case of *People* v. *Schmidt,* 64 Cal. 263, [30 Pac. 816], it is said: ''Upon due notice given the district attorney moved the court to dismiss the action and retain the defendant in custody for a re-examination upon a new charge for the same homicide. The defendant and his counsel were present at the hearing of the motion and made no objection; and the court ordered the dismissal upon the ground stated in section 1385, *supra.* After the entry of the order a new charge of murder was made against the defendant upon which he was regularly examined before a magistrate and committed to

answer. The dismissal of the former action did not consti-
tute a bar to another prosecution for the same homicide.
(Pen. Code, sec. 1387.) ''

In that case, however, it is said: ''But it was also proved
that the information upon which he was convicted contained
no allegation that the homicide had been committed with
'malice aforethought,' nor were any words of equivalent im-
port used in it to describe the crime; the information was
therefore fatally defective.''

In *People* v. *Campbell*, 59 Cal. 243, [43 Am. Rep. 257], and
*People* v. *Breen*, 130 Cal. 72, [62 Pac. 408], the doctrine is
reiterated that ''an order setting aside an indictment or in-
formation is no bar to a future prosecution for the same
offense,'' but it does not appear upon what specific ground
the orders were made in those cases. In *People* v. *Mooney*,
132 Cal. 14, [63 Pac. 1070], there had been a trial, conviction
and a reversal of the judgment by the supreme court on the
ground that the information was fatally defective. ''Upon
a return of the remittitur to the trial court, the district at-
torney made a motion in furtherance of justice that the court
dismiss the information.'' Thereupon the information was
dismissed and the defendant discharged. Proceedings were
again taken in the justice court and a new information filed
upon which defendant was convicted, and the supreme court
held that he had not been in jeopardy.

In *People* v. *Smith*, 143 Cal. 597, [77 Pac. 449], it was held
that ''The dismissal of a charge of petit larceny in a justice's
court on motion of the district attorney, for the purpose of
charging a felony for the same offense against the same de-
fendant, based upon a prior conviction of burglary, does not
operate as a former acquittal.''

The foregoing cases are certainly authority for holding—
if authority other than the provision of the statute is needed
—that the dismissal of an information in the interests of
justice is not a bar to another prosecution for the same offense.
Nor does it signify that ''the defendant,'' as stated by ap-
pellant, ''was not the actor in any matter that laid the founda-
tion for the plea, but, on the contrary, all the proceedings
taken that created and compelled the jeopardy were done
against his wishes and without his act or consent.'' If there
had been a conviction of the defendant upon the first informa-
tion it would indeed have been a bar to another prosecution

unless it had been set aside at his instance; but the case is entirely different where the jury disagree and are discharged by the court. Then the status is the same as though there had been no trial at all, and no consent of the defendant is required to justify the court in dismissing the case under said section 1385. The legislature has not attempted to define the expression "in furtherance of justice," and therefore it is left for judicial discretion exercised in view of the constitutional rights of the defendant and the interests of society to determine what particular grounds warrant the dismissal.

As far as the depleted condition of the treasury is concerned, we cannot give our adherence to the view that this is a sufficient ground for the course pursued. The right of an individual charged with a crime to a speedy trial without unnecessary delay and embarrassment is surely as urgent and important as that of a creditor of the county to have his just demands promptly liquidated. The other reasons urged by the district attorney are more meritorious, but it would have been much better if they had been embodied in an affidavit and made the basis for an application to have the cause continued a reasonable period for trial. Thereby the investigations could have been completed, the additional witnesses probably secured and the necessity avoided of adjudicating the vexatious question now presented.

But passing this, the statute provides that the order "as provided in this chapter" is not a bar, and the mandate in reference to said order is that it must contain the "reasons of the dismissal."

We have no authority to disregard this requirement or to hold that it is merely directory. The proceeding is somewhat harsh, and imposes an additional burden upon the defendant, and no substantial departure from the plain provision of the statute should be tolerated.

In the case of *People* v. *Jordan*, 63 Cal. 219, it appears that "Pending a demurrer to an information a new information was filed, and afterward the demurrer to the former information was sustained, but no order was made or requested permitting a new information to be filed, nor was any opinion expressed that the objection raised could be avoided by a new information," and it was held that the judgment on demurrer to the first information was a bar to another prosecution. *Ex parte Williams*, 116 Cal. 512, [48

Pac. 499], is to the same effect, although the court sustained
the demurrer "with leave to the district attorney to file a
new information." It was held, however, that the mandate
of the law must be respected in a matter affecting the sub-
stantial rights of the defendant.

Here there is no pretense that the order of the court re-
cites the reasons upon which it was based. It is true the
record shows the grounds upon which the motion was made
by the district attorney, but nothing in the order shows that
these grounds were, or any of them was, the basis for the
action of the court.

There is an objection by the attorney general that "once
in jeopardy" was not sufficiently pleaded. Section 1017,
subdivision 4, of the Penal Code provides a simple form for
such a plea. The defendant followed substantially the lan-
guage of the code, but instead of specifying simply the "time.
place and court," he set forth all the facts, including the
specific times, places and courts in any way relating to the
plea, so that even laymen could understand the import of the
plea. The only valid objection that could be urged against
it is that it contains more than the law demands, but this
does not deprive the defendant of the right to have it con-
sidered.

It is to be observed that this is no "technical" objection
to the proceedings as the term "technical" is commonly un-
derstood, but it relates to an important rule of procedure
which the legislature has provided for the guidance of the
courts, and the omission to observe it cannot be held to be
innocuous without an invasion of the authority of a co-ordin-
ate branch of the government. If the practice of which
complaint is made is to be continued, it is manifest that great
abuse is likely to follow, more dangerous to society than even
the acquittal of the guilty.

2. Complaint is made of various rulings of the court in
admitting evidence over the objection of appellant. Conced-
ing some of the rulings to be erroneous, the error seems to
have been without prejudice. We, therefore, forego any
specific consideration of them and devote our attention to
the following instructions given by the court: (A) "The
court instructs you that in determining whether the defend-
ant is guilty of the larceny of said animals, as charged, I
instruct you that it is not necessary for the people to prove

that the defendant actually participated in the act of leading or driving away the animals from the possession of their owner. If you believe to a moral certainty and beyond a reasonable doubt, from all of the evidence and circumstances of the case, that the defendant knew, at the time said animals were placed in his pasture, if they were placed there, that the same had been feloniously stolen and driven away from their owner, and that the defendant did thereafter aid and abet the thief in taking and driving said animals to the pasture on the river, known as the 'Service' pasture.'' Again, (B), ''If you are satisfied from the evidence beyond a reasonable doubt and to a moral certainty, that at the time the defendant took the animals mentioned in the information from the Hatch & Service pasture to the corral of Mr. Gordon, if he did take them or assisted in doing so, he did so with a felonious intent, and if you further find that such taking was prior to the thirty-first day of October, 1906, and in the county of Madera, and that at said time said animals were the property of Miller & Lux, Incorporated, a corporation, then I instruct you that the offense of grand larceny is complete as charged. It is no excuse for the felonious taking of personal property that such property had been previously stolen by some person other than the person accused, if the person accused thereafter himself feloniously took, stole or drove away said property, and it makes no difference whether such taking was done with or without the consent of the person who previously stole the same.'' These instructions are separated by another instruction upon a different subject. The first one, which we have marked A, is not complete, but the latter clause plainly implies that if the jury believe the facts therein stated, they must find the defendant guilty of larceny. The first sentence in the instruction is not open to objection, as it is not necessary that the defendant actually participate in the act of leading or driving away the animals; it is sufficient if he aided and abetted its commission or, not being present, advised and encouraged the commission. (Pen. Code, sec. 31.) But the criticism of appellant is directed at the second clause, which in effect holds, so it is claimed, that one who does not participate in any manner in the original taking, but subsequently receives the property into his possession knowing it to have been stolen, is guilty of larceny the moment he moves it from one spot to another while it is so in his

possession. "The pawnbroker who has never heard of the stolen watch before it is brought to him and he is told it is stolen is guilty of larceny the instant he takes it from the counter and puts it in the show-case to sell." It is insisted that this is not the law, and that in order to constitute larceny there must be some participation, either directly or indirectly, in the original taking. It is undoubtedly true that the instructions must be considered in the light of the facts disclosed by the evidence, and it is often properly held that an instruction, although erroneous as an abstract proposition of law, is not prejudicial because it is apparent from the record that it could not have influenced the verdict of the jury.

In the case at bar, however, there was no evidence of the actual participation of the defendant in the original taking from the possession of Miller & Lux, and it was conceded by the people that the mules were brought by a Mexican to defendant's place and left there to be pastured. Some days after that they were taken to what was known as the Service pasture, and about six weeks thereafter they were taken to the Gordon corral mentioned in instruction B.

The jury must have understood from instruction A that though defendant had no connection whatever with the original caption and no knowledge of it at the time, yet if he afterward received into his possession the property with knowledge then that it had been stolen and subsequently participated in the disposition of it, he is guilty of larceny. But the instruction is erroneous because it presupposes that the larceny had been completed before defendant had any guilty knowledge of it. In fact, it assumes that the mules "had been feloniously stolen and driven away" before they were received into defendant's pasture, and, the asportation having been terminated, that the defendant aided the thief in getting rid of the property. No man can be guilty, as principal, of a crime who has no knowledge of it until the crime is fully consummated. The facts set forth in the instruction constitute the crime of receiving stolen property and nothing more.

In *Tucker* v. *State*, 21 Tex. App. 699, [2 S. W. 893], defendant was convicted of theft, his defense being that he bought the animal in question from two strangers. Defendant asked the court to instruct the jury as follows: "If you

find that M. A. Tucker drove up the yearling in question, and that defendant, after it was brought to his lot, opened the gate, and had nothing to do with the original taking and driving, you will acquit; and this is so, no matter what connection defendant had with it thereafter.'' The appellate court said: ''This sixth requested instruction was directly pertinent and applicable to the facts proven, and presented the law in a concise and pointed manner to the vital issue in the case, . . . and we are of the opinion it was error to refuse to give said instruction.''

In *Boyd* v. *State*, 24 Tex. App. 570, [5 Am. St. Rep. 908, 6 S. W. 853], it is said: ''The prosecution, however, being for theft, and it being absolutely essential in support of that charge to connect the defendant with the original taking to warrant his conviction, without such proof of connection any subsequent guilty connection with the stolen animal, such as a receiver of the same, or as to the party who had illegally altered the mark or brand, would not be sufficient to warrant the conviction for theft. To inculpate a defendant as a principal offender in the crime of theft, the state must show that he had some connection with or complicity in the taking of the property. It does not suffice to prove that subsequent to the taking, and without complicity therein, but with knowledge that the property had been stolen, he aided the taker to dispose of it.''

In *People* v. *Maxwell*, 24 Cal. 14, a larceny case, the following instruction was condemned: ''Should you believe from the evidence that the witness Morgan stole the property described in the indictment, and that the same was found in the possession of this defendant, and that this defendant and Morgan were associated together and that the defendant knew that the property was stolen, then and in that case he is equally guilty in the eye of the law, and your verdict should be guilty.''

In *People* v. *Stakem*, 40 Cal. 599, it is held that if the cattle were stolen by another than the defendant, and the defendant afterward had guilty knowledge that they were stolen and aided and assisted the other in selling and disposing of said cattle, and was to participate in the profits thereof, he was guilty of the specific offense under the statute of receiving stolen property.

In *People* v. *Ward*, 105 Cal. 659, [39 Pac. 35], it is said that "The crime of larceny is distinct from that of receiving stolen goods, and proof of the latter crime is insufficient to convict a person who is accused of the former," and it was impliedly held that the following instruction given by the court was correct: "Before you can convict defendant, you must believe beyond a reasonable doubt that he is guilty of, or in complicity with, the original fraudulent taking, and any subsequent connection after the taking would not be larceny in him, either in good or bad faith; and if you believe that the defendant traded for the cow from Bane, or any other party, after the felonious taking, either in good or bad faith, he is not guilty of larceny, and you must acquit him."

In *People* v. *Horton*, 7 Cal. App. 34, [93 Pac. 382], the following instruction was upheld: "Before you can convict the defendant of larceny you must believe beyond a reasonable doubt that he is guilty of, or in complicity with, the original fraudulent taking, and any subsequent connection after the taking would not be larceny."

The instruction marked B is equally objectionable as the one we have been considering. It assumes that the third asportation with a felonious intent would constitute larceny. The second paragraph of the instruction, abstractly considered, may be a correct exposition of the law, but it was liable to be misapplied by the jury in view of the evidence. It is true that after the original taking was completed the defendant might have stolen the property. If, for instance, he had feloniously taken it from the possession of the Mexican, it would be larceny and the ownership could have been laid in the latter or in the real owners, Miller & Lux. But a defendant cannot "feloniously steal and take property"— necessary to constitute larceny—which is already in his possession. Applying it, however, to the facts, the jury were likely to conclude from this portion of the instruction that a felonious disposition of the property after it had been stolen by another was larceny. Respondent cites the case of the *People* v. *Del Cerro*, 9 Cal. App. 764, [100 Pac. 887], as authority in support of these instructions. But in the Del Cerro case it was expressly held that the instruction should not be construed as a direction to the jury that "if the defendant

11 Cal. App.—31

knew the animals were stolen from Miller & Lux, and after the theft received the loot and disposed or assisted in the disposition of the same, he is guilty of grand larceny." And while suggesting that it was somewhat obscure, it was declared that in view of other instructions the jury could not have been misled by it, and that reasonably interpreted as a whole it applied to the theory of the prosecution supported by the evidence that the defendant and one Del Carlo had entered into a conspiracy to steal the property; that Del Carlo drove the animals off the ranch, and that while the animals were still in transit Del Cerro, by prearrangement, joined in the asportation. The instructions of which complaint is made here are capable of no such construction. They do not contemplate any participation or complicity in the original taking or asportation. They ignore all distinction between larceny and receiving stolen property, and in view of the undisputed evidence must have been prejudicial to the substantial rights of the defendant.

In *State* v. *Grant,* 76 Mo. 236, it was held that "a larceny may be regarded as still in process of accomplishment so long as the original caption is still unbroken and the original asportation is still in progress"; and in *State* v. *Trexler,* 4 N. C. 188, [6 Am. Dec. 558], that "where there is one continuing transaction, though there may be several distinct asportations, the party may be indicted for the final carrying away," but the several asportations were continuous and by the same party, while here, as we have seen, the instructions are based upon the hypothesis that the offense of larceny had been completed before any culpable participation on the part of the defendant.

Among other instructions the defendant requested that the court give the following, which was refused: "The jury is instructed that if you believe that the only part that the defendant took in the alleged larceny was that he, after the said mules were stolen, aided or assisted the person who stole them in selling or disposing of them, or participated in the profits thereof, then he cannot be convicted of grand larceny, and in such case you will acquit the defendant." As this states a correct principle of law, and as there was evidence to which it would apply, we think it should have been given.

In conclusion, we deem it proper to state that the evidence of larceny by defendant is slight; there is at least more evi-

dence against him of the crime of receiving stolen property, and if it should be deemed advisable to prosecute him for this latter offense, the former conviction, of course, would not be a bar.

The judgment and order are reversed.

Hart, J., and Chipman, P. J., concurred.