[Crim. No. 2461. First Dist., Div. Two. Oct. 9, 1947.]

THE PEOPLE, Respondent, v. JOHN C. DEFER et al., Appellants.

Alfred J. Hennessy for Appellants.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

GOODELL, J.—The appellants were convicted of murder of the first degree and sentenced on the jury's recommendation to life imprisonment. No appeal was taken from the judgments of conviction. A motion was made in each case to correct the record "to make the clerk's minutes . . . speak the truth," and from orders denying such motions these appeals were taken. Appellants sought such correction so that the record would affirmatively show that the verdicts

had not been recorded before the jury was discharged. The case will be treated as if the record in the trial court had been so corrected, for the record on appeal shows that the verdicts were not so recorded.

Section 1164, Penal Code, provides that "When the verdict given is such as the court may receive, the clerk must immediately record it in full upon the minutes, read it to the jury, and inquire of them whether it is their verdict. If any juror disagree, the fact must be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case."

 On submission to the jury, forms of verdict were given them in the usual way. When they returned into court the foreman handed the signed verdicts to the clerk, who handed them to the judge. The judge returned them to the clerk with the direction to read them to the jury and have the jury "declare them to be their verdicts" (Pen. Code, § 1149) which was done. The clerk put the question first to the foreman and then to the jury as a whole and received affirmative answers. To the judge's question whether the defense wished the jury polled (Pen. Code, § 1163), counsel answered in the negative.

The judge then directed the clerk to record the verdicts. What the clerk did in response to this order was to put the county clerk's stamp on each verdict, showing its filing on December 13, 1946. Immediately after doing so, he again read each verdict to the jury and inquired whether it was their "true and lawful verdict as announced and recorded," and affirmative answers were again given, first by the foreman and then by all the jurors.

The verdicts were not written into either the rough courtroom minutes or the official minute book until after the jury was discharged. The appellants contend that because of this failure, and the failure to read them to the jury after recordation, they were not valid verdicts and the court was without jurisdiction to pronounce judgment.

The case of *People* v. *Gilbert*, 57 Cal. 96, is relied on by the respondents. There the foreman wrote the verdict in the jury room on "a scrap of paper." The clerk read this informal writing to the jury and they declared it to be their verdict. The jury was then discharged and the verdict was not recorded in any minute book until after they disbanded. This is sub-

stantially what happened in the case at bar except that here the verdicts were twice read to the foreman and twice to the jury as a whole, and were stamped as filed.

"It is very obvious," said the court in that case, "that the proceedings in the case were not in strict conformity to Sec. 1164 of the Penal Code," but the court nevertheless decided that the irregularity was not prejudicial, remarking that the provisions of sections 1258 and 1404 removed all doubt on the point. Those sections, enacted in 1872, and still in effect, antedated by many years section 4½ of article VI of the Constitution, to which they are akin in purpose.

In the Gilbert case the court said, "If the clerk had first pasted the verdict in his rough minutes, and had then read it to the jury, the letter of the law would have been complied with; and it is difficult to see what additional weight or authority would have been given to the verdict by that proceeding."

Appellants claim that the Gilbert case was impliedly over-ruled by *Brownell* v. *Superior Court*, 157 Cal. 703 [109 P. 91], but we are satisfied that it was not. In that case the court, in speaking of the rough minutes kept by the clerk of a probate department, said: "There is no law providing for 'rough minutes' . . . they do not constitute an official record of the court. . . . We cannot regard this personal memorandum as in any sense a record of the court, or as an official record of any character." The question in that case was whether the petitioner's time to apply for relief under section 473, Code of Civil Procedure, ran from the clerk's entry in his rough minutes or from the signing and entry of the "paper" order or decree of partial distribution. If it ran from the entry in the rough minutes the application for relief was too late. The court held that the rough minutes meant nothing and that the time ran from the signing and entry of the judge's order.

Obviously, the Brownell case could not have overruled the Gilbert case, for in the latter case rough minutes were not at all involved. The clerk there had not pasted the verdict in his rough minutes, and whatever the court had to say on that subject was purely hypothetical and by way of argument.

The present case cannot be distinguished on its facts from *People* v. *Gilbert,* and we are of course bound to follow that case, the authority of which seems never to have been questioned. Accordingly, we must hold that the placing of the

filing stamp on the verdicts was not a recordation of them on the minutes of the court, either actual or constructive. It merely made the verdicts part of the court files as of December 13, 1946.

Appellants have cited cases on this subject from other jurisdictions, but with direct authority in this state, it is unnecessary to discuss them.

The practice of failing to comply with the requirements of section 1164 has been sharply criticized by our Supreme Court. In *People* v. *Smalling,* 94 Cal. 112 [29 P. 421], there was (as in this case) a conviction of murder of the first degree with punishment fixed at imprisonment for life. Forms of verdict were given to the jury on the three issues of former acquittal, former conviction and once in jeopardy, with directions to find thereon in favor of the People. After the verdict of guilty had been regularly returned defense counsel was asked by the court whether they insisted on the entry of these three directed verdicts before the jury was discharged, and answered that they did not. Accordingly (as in this case) the verdicts were not recorded until after the jury had been discharged and this was urged on appeal as a ground for reversal. The court, following *People* v. *Gilbert,* held that the irregularities did "not affect the validity of the judgment, and are such as come squarely within the provisions of the Penal Code cited" (meaning §§ 1258 and 1404, *supra*). The opinion pointed out that in *People* v. *Gilbert* "there was no waiver, and the verdict was not recorded until after the jury had been discharged; and while the proceeding was irregular, the court decided, especially in the light of sections 1404 and 1258 of the Penal Code, that no error existed which would justify a reversal of the judgment."

Notwithstanding this holding, the court saw fit to register the following criticism of what had been done: ". . . in a case of the importance of the present one, it is a matter of regret that occasion for it should ever have arisen. . . . The record clearly shows that irregularities existed in the manner in which these various verdicts were returned into court,— *irregularities occasioned without necessity, and which could have been easily avoided. In cases of felony,* and especially where a defendant is charged with the crime of murder, *the only correct procedure is to adhere strictly to the statute. Any other course is a dangerous innovation,* which generally results in a miscarriage of justice." (Emphasis added.)

This criticism is all the more pointed because (1) the verdicts were written in advance under the direction of the court; (2) they were given to the jury with directions simply to sign and return them; (3) by reason of the court's direction there could have been no alternative verdicts by which the jury could have been confused, and (4) there was a clear-cut waiver of the requirements of section 1164. In no subsequent case, to our knowledge, has the Supreme Court receded from its position.

A reversal of the orders appealed from would be of no avail to the appellants for even if the record as corrected showed the noncompliance, the validity of the judgments of conviction would remain unaffected under the authority of the cases already discussed. Moreover, the judgments have become final and the point could not be raised on habeas corpus. (*In re Northcott*, 71 Cal.App. 281 [235 P. 458].)

It is not contended that the verdicts did not express the true findings of the jury or that they were not unanimous. In this case, as was said in *People* v. *Kelso*, 25 Cal.2d 848, 854 [155 P.2d 819], ''. . . counsel for the appellants expressly waived his right to poll the jury, as he might have done if he questioned the votes by which the verdicts had been found.'' The record shows that the foreman was twice asked if it was the jury's verdict and twice answered in the affirmative, and the jurors as a whole were likewise twice asked and twice answered in the affirmative.

On the authority of *People* v. *Gilbert, supra,* we must hold that the irregularity in failing to comply with section 1164 was not prejudicial.

The orders appealed from are affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 6, 1947.