[Civ. No. 26644. Second Dist., Div. Two. Sept. 13, 1962.]

JOHN FRANKLIN MITCHELL, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Ellery E. Cuff, Public Defender, Roy R. Maines and James L. McCormick, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

ASHBURN, J.—By his petition for a writ of prohibition petitioner seeks to prevent his being tried a second time, after the jury was dismissed at his first trial ostensibly for inability to reach a verdict. His claim is double jeopardy.

Petitioner was tried by a jury on June 18, 1962, upon a charge of incest, violation of section 288, Penal Code, etc., before Samuel Laidig, Judge pro tempore of the superior court and was represented by the public defender. Both sides having rested the jury was instructed on June 19, 1962 and retired to deliberate at 11:45 a. m. They lunched from 12:10 p. m. until 1:25 p. m. At 4:45 p. m. the jury returned to the court room. A judge other than Laidig (pro tem.) was then on the bench and the following took place: "THE COURT: The record will reflect that all of the jurors are present in their respective positions, and defendant is present with counsel. Ladies and gentlemen of the jury, Judge Laidig had to go downtown to another trial downtown, and has asked me to stand in for him, and I understand counsel have stipulated that this will be satisfactory. MR. MAINES [Deputy Public Defender] : That's correct, Your Honor. MR. NOLAND [Deputy District Attorney] : That's correct, Your Honor. THE COURT: Satisfactory to the defendant and the People. I know nothing of this case, so I am going to ask a few questions of the foreman. Who is the foreman of this jury? Thank you. The end of the day has come, and the answer to my question will determine whether or not I should keep you a little longer or not, and so I will ask you this: the question is, has the jury a possibility of returning a verdict with a little bit more deliberation. THE FOREMAN: At this point I would say no, Your Honor. THE COURT: I take it the jury has not arrived at a verdict now. THE FOREMAN: Yes, sir. THE COURT: Can you, without revealing how it stands, in whose favor, can you tell me the numerical division. THE FOREMAN: By counts, Your Honor? THE COURT: Yes, so many one way against the other, without saying in whose favor. MR. NOLAND: Excuse me just a minute, not by counts you don't mean, Your Honor, there are five counts. THE COURT: Oh, I meant by how they stand—eight to four or five, something like that. How is the jury divided, without stating in whose favor. Is it six to six? THE FOREMAN: Your Honor, on one state-

ment it would be—— THE COURT: First of all, how many counts are there. You say in one statement, are there several counts? THE FOREMAN: Yes there are, Your Honor. THE CLERK: Four, Your Honor. THE COURT: Four counts. As to the first count? THE FOREMAN: To the first count—— THE COURT: Now remember, don't tell me in whose favor. THE FOREMAN: I would say it would be 80 per cent in favor of one direction. THE COURT: It is not percentage. In other words, there are twelve jurors, you would say six or—— THE FOREMAN: Well, yes, sir; six definite votes and six undecided. THE COURT: Now count number two. THE FOREMAN: Ten votes, two undecided. THE COURT: Count number three. THE FOREMAN: Ten and two. THE COURT: Count number four. THE FOREMAN: Ten and two. THE COURT: And it is your opinion, is it, that with another half an hour or so deliberation this evening you could not arrive at a verdict? THE FOREMAN: I do not believe so, Your Honor. THE COURT: Could we confer, counsel, up here out of the hearing of the jury. (Whereupon a discussion was had between the Court and counsel at the bench, outside the hearing of the jurors, which was not reported.) THE COURT: Well, ladies and gentlemen of the jury, you heard the foreman's statement, does anybody differ with his version of it? No one differs. If anyone differs with his version, will you raise your hand, number one as to the division, how it stood, and number two, as to a possibility of a reaching a verdict with a little more deliberation. No one disagrees with the foreman. Judge Laidig, when he asked me to sit in for him, said that in his opinion he would declare a mistrial at the end of the day and would not lock you up. I, therefore, do not feel that I will overcome his decision. It is his decision that deliberations would end at this time, unless the foreman would indicate that a little more time would be needed to arrive at a verdict. In view of the fact that the foreman has indicated, with the assent of all other jurors, that the jury has not arrived at a verdict at this time, quarter to five, and that even with a little bit more deliberation there is no possibility of arriving at a verdict tonight, I do hereby declare a mistrial. And ladies and gentlemen of the jury, this means that your services are terminated, this trial has ended.'' It does not appear from the record that either counsel had anything to say for or against the discharge of the jury or that defendant or his counsel in any way manifested consent thereto.

Penal Code, section 1140: ''Except as provided by law, the

jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.''

The dispute focuses upon the question whether there was an abuse of discretion in the determination of whether the jury could not reach a verdict, and the even more basic question of whether there was any exercise of discretion. ▓ It should first be pointed out that it does not appear to be necessary that defendant or his counsel object to an improper discharge of the jury before the claim of double jeopardy may be asserted. ▓ Section 1140 requires that consent be ''entered upon the minutes.'' In *People* v. *Valenti,* 49 Cal.2d 199 [316 P.2d 633], the jury was discharged and the information was dismissed. ''Defense counsel said nothing either in protest against or in acceptance . . . .'' (P. 202.) It was held that jeopardy had attached and that defendant could not be retried. Cases on both sides of this question are collected in 63 American Law Reports 2d 782.

In *Paulson* v. *Superior Court,* 58 Cal.2d 1 [22 Cal.Rptr. 649, 372 P.2d 641], after approximately five hours of deliberation the jury entered the courtroom and upon inquiry from the court replied that they had not reached a verdict. Questions were asked of the court and were answered. The court then asked the jury how it stood and the foreman replied. The court then made the following statement: '' 'Well, it just appears to the Court, Mr. Foreman, that this Jury has been confused. Some of the jurors are off on a tangent. Apparently they have misconceived the evidence, failed to understand the instructions or have not been able to apply the instructions to the evidence. I feel that I should declare this a mistrial. The Court declares this case a mistrial. The Jury is discharged with the thanks of the Court.' '' (Pp. 4, 5.) It was stipulated that at a time when the court was not in session the foreman of the jury reported to the bailiff that the jury was hopelessly deadlocked and the bailiff reported this to the judge. At pages 5 and 6, the court stated: ▓ ''Prohibition is a proper remedy to prevent retrial when a defendant has been once in jeopardy. (*Cardenas* v. *Superior Court,* 56 Cal.2d 273, 275 [14 Cal.Rptr. 657, 363 P.2d 889]; *Gomez* v. *Superior Court,* 50 Cal.2d 640, 652

[328 P.2d 976] ; *Jackson* v. *Superior Court,* 10 Cal.2d 350, 352 [74 P.2d 243, 113 A.L.R. 1422].)

■ " '[J]eopardy attaches to a defendant when he is placed on trial before a court of competent jurisdiction upon a valid indictment or information before a jury duly impaneled and charged with his deliverance.' (*Jackson* v. *Superior Court, supra.*) ■ If a jury is discharged without returning a verdict, the defendant cannot again be put in jeopardy unless he consented to the discharge or legal necessity required it. (*Cardenas* v. *Superior Court, supra*; *People* v. *Valenti,* 49 Cal.2d 199, 209 [316 P.2d 633] ; *People* v. *Webb,* 38 Cal. 467, 479-480.) ■ The discharge of a jury contrary to law is equivalent to a verdict of acquittal. (*Jackson* v. *Superior Court, supra,* 10 Cal.2d at p. 356; *People* v. *Webb, supra,* 38 Cal. at p. 478.)

■ ''Since petitioner did not consent to the discharge of the jury, the sole issue is whether legal necessity required it. There is such necessity when 'at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree.' (Pen. Code, § 1140; *People* v. *Smalling,* 94 Cal. 112, 115 [29 P. 421] ; *People* v. *Cage,* 48 Cal. 323, 326 [17 Am.Rep. 436] ; *Ex parte McLaughlin,* 41 Cal. 211, 216 [10 Am.Rep. 272].) . . .

■ ''Although the determination whether there is a reasonable probability that the jury can agree rests in the sound discretion of the trial court, '[t]he power of the Court to discharge a jury without the consent of the prisoner is not an absolute, uncontrolled discretionary power. It must be exercised in accordance with established legal rules and a sound legal discretion in the application of such rules to the facts and circumstances of each particular case, and in this State is subject to review by an appellate Court.' (*Ex parte McLaughlin, supra,* 41 Cal. at pp. 218-219.) An extrajudicial report from the jury that it cannot agree on a verdict does not justify its discharge.''

■ At pages 7 and 8: ''Ordinarily the trial judge should not discharge a jury on the ground that there is no reasonable probability that the jury can agree without questioning the jurors individually as to such probability. [Citations.] ■ 'The statute does not provide just what proceeding shall be taken to determine the probability of an agreement, but no better method occurs to us than to obtain from the jurors an expression of their judgment, and the

court, in the exercise of the discretion committed to it, may give such weight to this opinion as the surrounding circumstances seem to demand.' (*People* v. *Disperati, supra* [11 Cal. App. 469 (105 P. 617)]; see also *People* v. *Greene, supra,* 100 Cal. at p. 142 [34 P. 630]; *People* v. *Cage,* 48 Cal. 323, 327 [17 Am.Rep. 436].) This procedure was not followed here.

". . . After the jury entered the courtroom, the foreman stated that no verdict had been reached, but he gave no indication that he or any other juror considered further deliberations futile. . . .

 "Once the jury is impaneled and sworn, the defendant is in jeopardy. He cannot be deprived of any benefit to be derived from that jeopardy and is entitled to have the jury render a verdict, when, as in this case, he has not consented to the discharge of the jury and there is no legal necessity for such discharge. (*People* v. *Ny Sam Chung,* 94 Cal. 304, 307 [29 P. 642, 28 Am.St.Rep. 29]; *People* v. *Hunckeler,* 48 Cal. 331, 334.)' "

It will be noted that in the instant case the jury was never asked about its ability to agree and this question was never decided. It was merely determined that the jury could not return a verdict with "a little bit more deliberation"; "with another half an hour or so deliberation this evening."

Furthermore, it quite clearly appears that the presiding judge based his decision not upon his own observations of the jury but upon the decision of the judge who tried the case and who had no opportunity to observe or question the jury at the critical time. "Judge Laidig, when he asked me to sit in for him, said that in his opinion he would declare a mistrial at the end of the day and would not lock you up. I, therefore, do not feel that I will overcome his decision. It is his decision . . . ." No procedure is set forth by section 1140, Penal Code, to determine whether it "satisfactorily appears that there is no reasonable probability that the jury can agree." But it would appear to be essential that this determination be made by the judge presiding at the time of such determination.

An analogous situation occurred in *People* v. *Surplice,* 203 Cal.App.2d 784 [21 Cal.Rptr. 826]. Sentence was imposed by a judge who did not try the case. The judge made the following statements: "Let me say, I have checked the file and I can tell from the notes in the file the sentence that Judge Evans has in mind. Generally, I feel that a defendant is en-

titled to be sentenced by the judge who found him guilty or accepted the plea. If that is satisfactory with you, I will, without making any pretense at evaluating this myself, just impose the sentence that Judge Evans had in mind. . . . As I say, it is clear that this is the sentence that Judge Evans indicated he was going to impose. This does not represent my independent judgment; is that understood?" (P. 790.) Holding this to be error the opinion states: "It is well established in the law that the severity of the sentence and the placing of defendant on probation rest in the sound discretion of the trial court. (*People* v. *Johnson*, 9 Cal.App. 233 [98 P. 682].) It also is fundamental that the law contemplates an exercise of that discretion by the sentencing judge and in the absence of such exercise there has been no lawfully imposed sentence" (p. 791); and at page 792: "A sentence imposed under these conditions is an abdication of the judge's duty to exercise judicial discretion. Therefore the sentence imposed is void."

The sound reasoning employed in that opinion is equally applicable in the case at bar. ▮▮▮ A jury should not be discharged in the absence of legal necessity, and it appears that in this case no attempt was made to determine that question and the decision was made by a judge not in a position to make such observation as would enable him to arrive at a proper decision.

Let a peremptory writ issue as prayed.

Fox, P. J., and Herndon, J., concurred.