[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1317 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1318 
OPINION
More than a century ago, Justice Holmes wrote: "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." (Holmes, The Path of the Law (1897) 10 Harv. L.Rev. 457, 469.) Although "revolting" may be too strong a word, and the history of the law involved here does not trace back to the Middle Ages, we publish this opinion to draw attention to a statute whose language and application may be outdated.
 Since its enactment in 1872, Penal Code section 1385 (section 1385) has specified that dismissals of criminal prosecutions "must be set forth in an order entered upon the minutes." This language has been construed and applied by our Supreme Court to hold that no matter how conscientiously a trial court may state its reasons on the pages of the reporter's transcript, the quoted language makes that part of an appellate record superfluous: Only if the same information is memorialized in "an order entered upon the minutes" can an automatic reversal be avoided. However sound the reasons for imposing this requirement in 1872, they are no longer compelling. *Page 1319 
 Here, the People appeal from orders striking the additional punishment terms in this otherwise unexceptional drug prosecution. Because we are bound to apply unambiguous precedent from our Supreme Court, we are compelled to reverse even though the record before us leaves no doubt as to why the trial court ruled as it did. Moreover, that record would ordinarily be more than sufficient to conduct a standard harmless error analysis, yet we are forbidden to do so. The upshot is what appears a reversal for no better reason than that the trial court can put in different form a ruling already intelligible and known to the parties and this court. The illogic of such a pointless expenditure of time and money may warrant reexamination by the Supreme Court.
 BACKGROUND On the evening of July 8, 2004, a deputy sheriff made a traffic stop of a red Camaro on a highway in Contra Costa County. Defendant Thomas Bonnetta was a passenger in the car. Behind Bonnetta's seat the deputy found two cans of lye, which the deputy knew could be used in the illegal manufacture of methamphetamine. The deputy learned that Bonnetta was on parole, and thus subject to a condition of parole authorizing a search of his residence. The deputy took Bonnetta to the house where Bonnetta lived. A cursory search of the premises uncovered baggies containing a white crystalline substance, and more lye in Bonnetta's bedroom. The deputy also found in Bonnetta's bedroom a five-gallon jug containing what the deputy termed "an unknown substance." Believing that methamphetamine was being manufactured at the site, the deputy summoned assistance from more experienced officers.
 Specialists conducted a more thorough search.[1] They found the equipment and materials showing an ongoing operation for the manufacture and sale of methamphetamine. One of the officers asked Bonnetta, after appropriate Miranda (Miranda v. Arizona (1996) 384 U.S. 436 [16 L. Ed.2d 694, 86 S.Ct. 1602]) warnings, for "his side of the story." Bonnetta replied that he was "pulling pills to make money." The officer explained what this meant: "`Pulling pills' is when you take the pseudoephredrine out from over-the-counter pill medication to use in the manufacturing process of methamphetamine." The "forensic toxicologist" who analyzed the five-gallon jug detected "the presence of methamphetamine." *Page 1320 
 The above information is taken from the transcript of the preliminary examination, which began on October 27 and concluded on October 31, 2005. On November 10, 2005, the District Attorney of Contra Costa County filed an information by which Bonnetta and defendant Michael Claude Wilen were jointly charged with four counts: (1) manufacturing methamphetamine, in violation of Health and Safety Code section 11379.6, subdivision (a); (2) possessing the components to manufacture methamphetamine, in violation of Health and Safety Code section 11383, former subdivision (c)(1); (3) possessing specified chemicals with the intent to manufacture methamphetamine, in violation of Health and Safety Code section 11383, former subdivision (g); and (4) possessing methamphetamine for sale, in violation of Health and Safety Code section11378. Defendant Wilen alone was also charged with additional counts of possessing the components to manufacture methamphetamine, in violation of Health and Safety Code section 11383, former subdivision (c)(1), and with possession of "laboratory glassware or apparatus" with the intent to manufacture methamphetamine, in violation of Health and Safety Code section 11104.5.
 The information also set out numerous enhancement allegations. The manufacturing count was accompanied by an allegation that, "pursuant to Health and Safety Code section 11379.8[, subdivision] (a)(1) . . . the substance in the above offense exceeded three gallons of liquid by volume and one pound of solid substance by weight." It was further alleged, "pursuant to Health and Safety Code section 11370.2[, subdivision] (c)," that defendant Bonnetta had suffered prior drug-related convictions in 1978, 1987 (twice), 1998, and 2000. Both 1987 offenses, those in 1998 and 2000, and a 1994 conviction for being a past convicted felon in possession of a firearm (Pen. Code, § 12021) were also alleged to be felonies for which Bonnetta served a term in prison within the meaning of Penal Code section 667.5, subdivision (b). Finally, it was alleged in the information that Wilen had seven prior felony convictions for which he served a term in prison within the meaning of Penal Code section 667.5, subdivision (b); several of those convictions were also drug related, and thus also within Health and Safety Code section 11370.2, subdivision (c).
 In February 2006, [2] Wilen moved to quash the search warrant (see fn. 1, ante) and to suppress all evidence obtained in the ensuing search. The motion was heard and denied that same month. *Page 1321 
 The next event occurred in July, when the cause went before the Honorable Theresa Canepa, possibly for a readiness conference. Just what occurred is partly a matter of conjecture, because the proceedings were not reported. However, it appears undisputed that Judge Canepa indicated that she would sentence Wilen to no more than six years eight months imprisonment if he entered pleas of guilty to all the charges and admitted the enhancements, and that Bonnetta would get no more than eight years. Defendants promptly executed waiver and plea forms signifying their acceptance of the offers.[3]
 We do have a transcript for a hearing held on July 26, at which the prosecutor "object[ed] to the Court's sentencing option if the defendants were going to accept and enter a change of plea." The prosecutor stated "it's the People's position that the Court can't get to the numbers it got to without striking the variously charged enhancements. And in order to strike all of those enhancements, the People feel that the Court would need to make certain findings for the record that, based on the facts and circumstances of this case, the Court could not make without abusing its discretion, [ ¶] And so under the authority of Penal Code section 1385
and Health and Safety Code section 11379.8 (d), and the other enhancements that would have to be stricken, the People would object. . . ."
 Associate counsel for Bonnetta advised the court that "Mr. Bonnetta wants to accept the offer the Court made him." But because Bonnetta's lead counsel was not present, the court put the matter over to August 14, the trial date. When the court told counsel for Wilen that Wilen "can plead straight today to the sheet," counsel replied, "We would like to do that." However, the court put Wilen's matter over for two days, stating that "depending on what I review from the cases and argument from both sides I'll either sentence him to what I said I was going to sentence him to, or I'll allow him to withdraw his plea."
 Two days later, on July 28, the prosecutor provided the court with Wilen's Penal Code section 969b "packet" of his criminal history and, based on it and the California Rules of Court governing sentencing, argued against the court's indicated sentence for Wilen. The court responded: "It is absolutely clear as crystal that the trial judge's sentencing discretion cannot be limited by any requirement of prosecutorial consent. . . . [¶] . . . [¶] When there's a plea to the sheet, the court can make a disposition as it sees fit." After hearing *Page 1322 both sides, the court stated: "I have the plea form [see fn. 3, ante] here, and I am going to take the plea. [¶] . . . [¶] Now, for the record the court has offered an indicated sentence, if Mr. Wilen pled as charged, of six years, eight months. The indicated sentence apparently has been accepted." The court then accepted Wilen's pleas of no contest to all of the charges, and his admissions of all of the enhancement allegations.
 Except for the arguments, this process was essentially repeated on August 14, when Bonnetta entered pleas of no contest to all of the charges and admitted all of the enhancements alleged against him. By that time, the prosecutor had filed a "sentencing brief urging the court to impose a total sentence of 17 years for Bonnetta.
 Defendants were sentenced on September 15.[4] Bonnetta's counsel spelled out the "substantial reasons why . . . the court's offer was eminently fair." The district attorney reiterated that "the People continue to submit it would not be in the interest of justice to strike the priors," and that "17 years is the most appropriate sentence for defendant Bonnetta." Judge Canepa then pronounced sentence as follows:
 "[A]s to count 1, which is the violation of Health and Safety Code section 11379.6 (a), the court imposes the midterm of five years.
 "The court will strike the quantity enhancement pursuant to 11379.8 (a)(1). . . . [¶] The issue [is] whether the substance itself exceeds three gallons of liquid by volume and one pound of solid substance by weight: I've reviewed the preliminary hearing testimony, and I do not find that beyond a reasonable doubt that that was something that could have been proven at trial. . . . So I am striking the additional punishment, pursuant to 1385, in that matter.
 "As to count 2, the violation of Health and Safety Code section 11383
(c)(1), the court imposes the midterm of four years to run concurrent with the term imposed in count 1.
 "As to count 3, the violation of Health and Safety Code section 11383
(g), the court imposes the midterm of three years concurrent with the term imposed in count 1. *Page 1323 
 "And as to those two counts, there's an issue of whether Penal Code section 654 would come into play as to whether the court could impose consecutive punishment as well.
 "As to count 4, the violation of Health and Safety Code section 11378, the court imposes the midterm of two years to run concurrent with the term imposed in count 1. [ ¶] . . . [¶]
 "So the enhancement pursuant to section 11370.2 (c), which is dated January 26, 1978, as to that enhancement, the court will strike the punishment of three years under Penal Code section 1385 (c), due to the age and the remoteness of the conviction, as it is more than 28 years old.
 "As to the enhancement pursuant to 11370.2(c), dated May 28, 1987, the court will strike the punishment of three years under Penal Code section1385(c), due to the age and remoteness of the conviction, as it is 19 years old.
 "As to the enhancement pursuant to section 11370.2 (c), dated January 5, 1987, the court will strike the punishment of three years, pursuant to Penal Code section 1385 (c), based on the age and the remoteness of the conviction, as it is 19 years old.
 "As to the enhancement pursuant to section 11370.2 (c), dated December 15, 1998, the court will strike the punishment of three years under Penal Code section 1385 (c) in the interest of justice and the need to achieve parity in sentencing to facilitate the speedy resolution of this matter.
 "As to the enhancement pursuant to Health and Safety Code section 11370.2
(c), dated March 20, 2000, the court will impose three years to run consecutive to the term imposed in count 1 for a total aggregate term of eight years in the state prison.
 "As to the remaining prior convictions alleged pursuant to 667.5 (b), which are one-year priors, the court will strike those prior convictions for the purposes of sentencing . . . pursuant to Penal Code section 1385
in the interest of justice."
 The court then turned to Wilen. His counsel simply asked Judge Canepa to "incorporate" the arguments made when Wilen changed his pleas, and the "many reasons . . . why I thought that the court could come up with that figure," namely, the six years eight months of the indicated sentence. The prosecutor discussed the factors addressed in her sentencing brief, and *Page 1324 concluded that "the People continue to urge the Court that a 17-year sentence is the most appropriate disposition here." (See fn. 4, ante.)
 Judge Canepa prefaced the imposition of sentence by remarking, "Upon my review of the preliminary hearing testimony and the other documents that were submitted, I find that his culpability in this offense is lesser than that of Mr. Bonnetta's. [¶] There was manufacturing equipment not located in his locked bedroom. He was living with his girlfriend at the time of the offense, although he had had a bedroom in Mr. Bonnetta's house for five months, while Mr. Bonnetta had lived in the house for two years. The house belonged to Mr. Bonnetta. His criminal history, while extensive, is less extensive than Mr. Bonnetta's." Wilen's sentence was then pronounced:
 "So as to count 1, the felony violation of Health and Safety Code violation 11379.6 (a), the court is imposing the midterm of five years.
 "As to the enhancement pursuant to Health and Safety Code section 11379.8
(a)(1), as to the weight enhancement, the court will strike it for purposes of sentencing pursuant to Penal Code section 1385
(c). And again, it is for the same reasons as stated for Mr. Bonnetta, that there was an issue as to whether or not the actual quantity was as alleged, [¶] And in terms of imposing the additional punishment, it was not established, to this court's belief, that it was such as to enhance the sentence by the additional time. And so therefore I will strike that punishment.
 "As to count 2, the violation of Health and Safety Code section 11383
(c)(1), the court imposes the midterm of four years to run concurrent with the term imposed in count 1. There's an issue of Penal Code section654, as well, regarding consecutive sentence in this matter.
 "As to Count 3, for the felony violation of Health and Safety Code section 11383 (g), the court imposes the midterm of three years to run concurrent with the term imposed in count 1. Once again, there is an issue of Penal Code section 654 as to a consecutive sentence.
 "As to count 4, the felony violation of Health and Safety Code section11378, the court is going to impose one-third the midterm of two years for eight months to be served consecutive to the sentence imposed in count 1.
 "As to count 5, the felony violation of Health and Safety Code section11383 (c)(1), the court is imposing the midterm of four years to run concurrent with the term imposed in count 1.
 "As to count 6, which is the misdemeanor violation of Health and Safety Code section 11104.5, the court is going to impose credit for the time that he's already served as to that offense. *Page 1325 
 "As to the enhancement pursuant to Health and Safety Code section 11370.2
(c), dated September 16, 1988, the court is going to strike the punishment of three years under Penal Code section 1385 (c), due to the age and remoteness of this conviction, which is 18 years old.
 "As to the conviction alleged pursuant to Penal Code section 667.5
(b), dated June 18, 1996, the court will impose one year to run consecutive to the term imposed in count 1.
 "And as to the remainder of the 667.5 (b) prior convictions, the one-year sentence on each will be stricken for purposes of sentencing pursuant to 1385 (c), based on the remoteness of those prior convictions which date from 1982 to 1992, for a total aggregate term of six years, eight months in the state prison."
 The district attorney filed a timely notice of appeal.[5]
 DISCUSSION I One preliminary matter requires mention. The manufacturing charge of count 1 alleged against both Bonnetta and Wilen was accompanied by what is commonly known as a "weight allegation" under Health and Safety Code section 11379.8, which authorizes additional imprisonment of up to 15 years depending upon the amount of illegal substance involved. Here, it was alleged that defendants came within subdivision (a)(1) of section 11379.8, which provides in pertinent part: "(a) Any person convicted of a violation of subdivision (a) of section 11379.6 . . . shall receive an additional term as follows: [¶] (1) Where the substance exceeds three gallons of liquid by volume or one pound of solid substances by weight, the person shall receive an additional term of three years." *Page 1326 
 The statute also provides a means where the additional prison time is not obligatory: "Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in this section if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment." (Health Saf. Code, § 11379.8, subd. (d).)
 But it was another statute that was invoked by the trial court here, which statute also authorizes a sentencing court to strike enhancement prison terms — section 1385. The relevant language of section 1385 is: "(a) The judge . . . may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. . . . [¶] . . . [¶] (c)(1) If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a)."
 At first glance, it appears that the two statutes have an overlapping scope, in that both empower a sentencing court to strike "additional punishment" for an enhancement. However, the district attorney contends that there is no authority shared by the two statutes, and argues that Judge Canepa "erred in striking the quantity enhancement pursuant to Pen. Code § 1385, subd. (c) because Health Safety Code § 11379.8, subd. (d) specifically sets forth the conditions under which it may be stricken." According to the district attorney, the authorization to strike additional punishment for a weight enhancement is in effect exclusive to Health and Safety Code section 11379.8, in claimed support of which he cites People v. Meloney (2003) 30 Cal.4th 1145 [135 Cal.Rptr.2d 602, 70 P.3d 1023] (Meloney). We disagree. Meloney not only fails to validate the district attorney's reasoning, it actually refutes it.
 The general issue in Meloney was the enhancement of Penal Code section12022.1, which specifies additional punishment for a defendant who commits an offense while on bail pending trial for another crime. The court's discussion of why trial courts have authority under section 1385 to strike an on-bail enhancement term is equally applicable here:
 "It is well established that, as a general matter, a court has discretion under section 1385, subdivision (c), to dismiss or strike an enhancement, or to `strike the additional punishment for that enhancement in the furtherance of justice.' As we held in People v. Thomas (1992)4 Cal.4th 206 [14 Cal.Rptr.2d 174, 841 P.2d 159], `absent a clear legislative direction to the contrary, a trial court retains its authority under section 1385 to strike an enhancement.' . . . *Page 1327 
 "Indeed, the Legislature not only has failed to evince a clear intent that section 1385 should not apply to enhancements imposed under section 12022.1, it clearly has demonstrated the opposite intent. Until 1998, Penal Code, section 1170.1, subdivision (h), provided: `Notwithstanding any other law, the court may strike the additional punishment for the enhancements provided in . . . Sections 667.15, 667.5, 667.8, 667.85, 12022, 12022.1, 12022.2, 12022.4, 12022.6, 12022.7, 12022.75, and 12022.9, or the enhancements provided in Section 11370.2, 11370.4, or 11379.8 of the Health and Safety Code, if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment.' [Citation.]
 "The Legislature repealed this subdivision of the Penal Code effective January 1, 1998, stating at the time: `In repealing subdivision (h) of Section 1170.1, which permitted the court to strike the punishment for certain listed enhancements, it is not the intent of the Legislature to alter the existing authority and discretion of the court to strike those enhancements . . . pursuant to Section 1385, except insofar as that authority is limited by other provisions of the law.' [Citation.] From this history it is apparent that the Legislature views sentence enhancements under section 12022.1 as being subject to a trial court's discretion to strike pursuant to section 1385." (Meloney, supra,30 Cal.4th 1145, 1155-1156, fn. omitted, citation omitted, underscoring added.)
 This reasoning is no less applicable here. We have underscored those statutes which authorized the enhancements the trial court declined to impose. They too would thus be covered by the Legislature's intention not to restrict the existing scope of trial court power under section 1385 to strike enhancement punishment terms. Most importantly, by including Health and Safety Code section 11379.8 in the statutes authorizing enhancement punishment terms, the Legislature clearly accepted that section 1385 could be used to strike a term otherwise mandated by Health and Safety Code section 11379.8.
 The district attorney is therefore mistaken in viewing the two statutes as uncoupled, and in treating Health and Safety Code section11379.8 as the exclusive authority for striking the weight allegation. Accordingly, there was no error in Judge Canepa using the power granted by section 1385 as the sole basis for striking all of the enhanced punishment terms.[6] We now consider *Page 1328 whether the district attorney has a valid basis for arguing that power was not correctly invoked and employed.
 II As previously mentioned, the text of section 1385 states that the reasons for any dismissal "must be set forth in an order entered upon the minutes." It is undisputed that Judge Canepa did not set out her reasons for striking the enhancement terms in an order entered in the minutes. The district attorney argues that this omission makes the court's orders "ineffective." Bonnetta and Wilen both respond that the district attorney's argument has been lost because the point was not raised at the time they were sentenced.
 Orders striking enhancement punishment terms under section 1385 are reviewed for abuse of discretion. (People v. Williams (1998)17 Cal.4th 148, 161-162 [69 Cal.Rptr.2d 917, 948 P.2d 429].) Defendants are thus invoking the waiver principle that, unless there was a timely objection at the time of sentencing, a reviewing court will not consider "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (People v. Scott (1994)9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Although originally formulated to rebuff claims of sentencing error by appealing defendants, the principle also applies to appeals on behalf of the People. (People v. Tillman (2000) 22 Cal.4th 300, 303 [92 Cal.Rptr.2d 741,992 P.2d 1109].)
 There are a limited number of exceptions to this general rule of waiver/forfeiture. One is that a reviewing court may consider "obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings." (People v. Smith (2001) 24 Cal.4th 849, 852 [102 Cal.Rptr.2d 731,14 P.3d 942].)[7] Defendants are correct *Page 1329 that, strictly speaking, the district attorney did not formally object at the time of sentencing to Judge Canepa's exercise of her discretionary power using section 1385, and thus could be deemed to have forfeited the right to challenge that exercise on appeal. However, in the unusual circumstances presented, we believe invoking the waiver principle here would be relying on a myopic hypertechnicality. By the time Bonnetta and Wilen were actually sentenced, the prosecution had repeatedly made known its objection to the court's striking of the enhancement punishment terms. The prosecutor's protest against the court's proposed course of action was the subject of the hearings held on July 26 and July 28. That protest was renewed, in writing, in the two sentencing briefs filed by the prosecutor. (See fn. 4, ante.) In short, by the time defendants were arraigned for imposition of sentence, the court had exhaustively considered, and rejected, the prosecutor's objection. If anything, the matter had been so thoroughly explored that any further protest would almost certainly have been futile. The prosecutor's failure to object at sentencing may be excused on that basis. (See People v. Abbaszadeh (2003)106 Cal.App.4th 642, 648-649 [130 Cal.Rptr.2d 873] decisions cited.)
 On the other hand, the same reasoning could ordinarily be employed against the district attorney, specifically his argument that the orders striking the enhancement punishment terms are "ineffective" because the court's reasoning was not recorded in a written order. Just as the court knew of the prosecutor's position, the converse was equally true. Why the court acted as it did was certainly no secret to the prosecutor, even before the court stated its reasons, in detail, on the record, when sentence was separately imposed on Bonnetta and then Wilen.
 But the waiver doctrine will not be invoked against the district attorney here. For one thing, he is arguing a pure point of law, namely the failure to comply with the literal language of section 1385. Moreover, as will be shown, our Supreme Court has repeatedly held that the statute's requirement that a dismissal "must be set forth in an order entered in the minutes" is mandatory and cannot be "disregarded" by appellate courts. This reasoning would appear to undercut the ability of a reviewing court to apply the waiver principle to this point. For each, and both, of these reasons, we conclude the issue of compliance with section 1385 is properly before us.
 The written minute order requirement of section 1385, compelling dismissals to be entered in the court's minutes, serves two purposes. It promotes judicial accountability and public confidence that judicial power is not being used in a corrupt or improper manner. (People v. Orin (1975)13 Cal.3d 937, 944, 947 [120 Cal.Rptr. 65, 533 P.2d 193] (Orin); Peoplev. Curtiss (1970) *Page 1330 4 Cal.App.3d 123, 126 [84 Cal.Rptr. 106]; People v. Silva (1965)236 Cal.App.2d 453, 455 [46 Cal.Rptr. 87].) No less importantly, it facilitates appellate review to ensure that the lower court has exercised its discretion with due regard for the public interest. (People v.Superior Court (Romero) (1996) 13 Cal.4th 497, 531 [53 Cal.Rptr.2d 789,917 P.2d 628] (Romero); People v. Beasley (1970) 5 Cal.App.3d 617,637-638 [85 Cal.Rptr. 501] (Beasley); People v. Romero (1936)13 Cal.App.2d 667, 670-671 [57 P.2d 557].)
 Although the trial court did not comply with the language of section 1385, the omission does not disserve either of these purposes. The court's reasoning is explained at length, as quoted, ante. The district attorney does not contend on this appeal that the court's reasoning is unclear or otherwise inadequately explained. There is no attempt to disguise Judge Canepa's identity as the person who struck the additional punishment terms. Thus, both of the purposes for the writing requirement are satisfied. The idea of reversing so that the trial court could put into a minute order the same explanation we already have in a reporter's transcript seems pointless. It is certain that it would produce no new information for our review. Attaching talismanic importance to one form of writing over another would, in the circumstances here, seem to qualify as "an arid ritual of meaningless form."[8] (Staub v. City of Baxley
(1958) 355 U.S. 313, 320 [2 L.Ed.2d 302, 78 S.Ct. 277].)
 Ordinarily, these reasons would be dispositive, and we would decline to reverse for so idle a reason. But this is not a usual situation. It is at this point that irresistible logic confronts the immovable object — more precisely, two immovable objects named Orin and Romero.
 In Orin, the trial court dismissed two counts after finding the defendant guilty of the third count. The court stated its reasons for dismissing one of the counts; those reasons were preserved in a reporter's transcript, but were not put into the minutes, which simply recited that the "`Remaining counts dismissed in interests of justice.'" (Orin, supra, 13 Cal.3d 937, 940-942 fn. 5.) The Supreme Court held that this was "manifestly invalid under section 1385 because of the court's failure to comply with the following provision of the statute: `The reasons of the dismissal must be set forth in an order entered upon the minutes.' [Citation.] It is settled law that this provision is mandatory and not merely directory. Recently in People v. Superior Court(Howard) (1968) 69 Cal.2d 491, 502-503 [72 Cal.Rptr. 330, 446 P.2d 138], while recognizing the broad right of a trial judge to dismiss in furtherance of justice, we adverted to the requirement that he `must state his reasons in the minutes' and took pains to point out that `[i]f the reasons are not set forth in the minutes, the order dismissing may not be considered a dismissal under *Page 1331 section 1385. [Citations.]' (Id., at p. 503, fn. 7.) [¶] Thus, it has been said: `The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the minutes must reflect the reason "so that all may know why this great power was exercised."' (People v. Beasley,supra, 5 Cal.App.3d 617, 637.) [¶] . . . [¶] . . . [T]his failure to comply with the requirement of the statute that the reasons of the dismissal be set forth in the order is fatal and is alone sufficient to invalidate the dismissal. . . ." (Orin, supra, 13 Cal.3d 937, 943-945.)
 Romero is familiar as the decision establishing that trial courts possess the power under section 1385 to strike prior convictions under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12). After an exhaustive constitutional and statutory analysis establishing that principle, the court turned to a discussion of section 1385 that featured extensive reliance on Orin:
 "A court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is . . . reviewable. . . . Section 1385 anticipates, and facilitates, appellate review with the requirement that `[t]he reasons for the dismissal must be set forth in an order entered upon the minutes' (§ 1385[, subd.] (a).) `The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the minutes
must reflect the reason "so that all may know why this great power was exercised.'" (People v. Beasley[, supra,] 5 Cal.App.3d 617, 637 . . .; see also People v. Orin, supra, 13 Cal.3d at p. 944 ['It is settled law that this provision is mandatory and not merely directory.'].) (8) ". . . [T]he trial court did not set forth its reasons for striking the prior felony conviction allegations in the relevant minute order, as required by section 1385[, subdivision] (a). The order contains only this explanation of the court's decision: `Court finds [Penal Code section 667] is unconstitutional and violates separation of powers and strikes the [prior felony conviction] allegation[s].' This statement explains why the court found section 1385 applicable, but does not explain `the reasons for the dismissal' (§ 1385[, subd.] (a)), that is, why the court felt it was proper to exercise its discretion under the section to strike the prior felony conviction allegations in this particular case. Under settled law such an order is ineffective. (People v. Orin, supra,13 Cal.3d at p. 944 ['"[I]f the reasons are not set forth in the minutes, the order dismissing may not be considered a dismissal under section 1385." [Citations.]']; [Citation.])" (Romero, supra,13 Cal.4th 497, 531-532.)
 The word "must" is usually, but not always, accepted as making a statutory duty a mandatory one. (E.g., Board of Supervisors v. Simpson
(1951) *Page 1332 36 Cal.2d 671, 675-676 [227 P.2d 14]; Rutledge v. City of Eureka (1925)195 Cal. 404, 424 [234 P. 82]; Rosenfield v. Superior Court (1983)143 Cal.App.3d 198, 202 [191 Cal.Rptr. 611].) The point is important because a mandatory duty is one where noncompliance "`with a particular procedural step will . . . have the effect of invalidating the . . . action to which the procedural requirement relates.'" (CaliforniaCorrectional Peace Officers Assn. v. State Personnel Bd. (1995)10 Cal.4th 1133, 1145 [43 Cal.Rptr.2d 693, 899 P.2d 79], quoting Morrisv. County of Marin (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251,559 P.2d 606].) A finding that a statutory duty is a mandatory one is always a matter of examining the statutory language. To that end, courts have formulated a pair of tests: "`In some cases focus has been directed at the likely consequences of holding a particular [duty] mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.] Other cases have suggested that a [duty] is deemed merely directory "unless a consequence or penalty is provided for failure to do the act. . . ."'" (CaliforniaCorrectional Peace Officers Assn. v. State Personnel Bd., supra, p. 1145, quoting Edwards v. Steele (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].)
 Were we the first court to consider the issue, it is unlikely we would conclude that section 1385 imposed a mandatory duty. Here, the consequence will be an utterly pointless remand. Moreover, the plain language of the section does not compel such a result. But we are not the first court, and we are not in unexplored territory.
 In one of the earliest decisions considering section 1385, the Court of Appeal in 1909 stated: "We have no authority to disregard this requirement or to hold that it is merely directory. The proceeding is somewhat harsh . . . [but] no substantial departure from the plain provision of the statute should be tolerated." (People v. Disperati (1909)11 Cal.App. 469, 476 [105 P. 617] (Disperati).) The court went on: "It is to be observed that this is no `technical' objection . . ., but it relates to an important rule of procedure which the legislature has provided for the guidance of the courts, and the omission to observe it cannot be held to be innocuous without an invasion of the authority of a co-ordinate branch of the government. If the practice of which complaint was made is to be continued, it is manifest that great abuse is likely to follow, more dangerous to society than even the acquittal of the guilty." (Id. at p. 477.) This language was periodically quoted, but not analyzed, in subsequent decisions. (People v. Superior Court (Schomer) (1970) 13 Cal.App.3d 672, 677-678 [91 Cal.Rptr. 651]; People v.Winters (1959) 171 Cal.App.2d Supp. 876, 881-882 [342 P.2d 538](Winters); People v. Romero, supra, 13 Cal.App.2d 667, 669.) It was not until Winters and Beasley that some texture attached to the words. *Page 1333 
 In Winters, the trial court sua sponte dismissed misdemeanor gambling charges on the ground that only one racial group of violators was being prosecuted. The court stated its reasons in lengthy detail, all preserved in the reporter's transcript, but the minutes recited only that the prosecutions were "`Dismissed . . . in interest of justice.'" (Winters,supra, 171 Cal.App.2d Supp. 876, 877-880.) The People appealed and the appellate department reversed, holding that section 1385 "requires that the minute order must set forth the reasons for the dismissal. We have no authority to disregard this requirement or to hold that it is merely directory. (People v. Disperati, supra, 11 Cal.App. 469, 476.) Here, there is no pretense that the minute order of the court recited the reasons on which it was based. It is true the reporter's transcript shows the trial court's motivation for the action, but the minutes do not reflect the reasons why the dismissals were `in the interest of justice.'" (Winters, supra, at pp. Supp. 881-882.) Then after quoting the second excerpt from Disperati quoted above, the reviewing court concluded: "A judge dismissing criminal charges without trial, upon his own motion, must record his reasons so that all may know why this great power was exercised, and such public declaration is indeed a purposeful restraint, lest magistral discretion sweep away the government of laws." (Id. at p. Supp. 882.)
 In Beasley, Division One of this district reversed a dismissal for the same reason as in Winters: "The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the minutes must reflect the reason `so that all may know why this great power was exercised.'" (Beasley, supra, 5 Cal.App.3d 617, 637, citingDisperati and Winters.) As previously noted, both Orin and Romero quoted these sentences.
 Disperati, supra, 11 Cal.App.469, may be distinguished because it was decided two years before California had a harmless error provision in our state Constitution. (See People v. Watson (1956) 46 Cal.2d 818, 834 [299 P.2d 243].) It is Winters and Beasley, both decided after adoption of that provision, and neither of which considers the possibility ofDisperati's reasoning having thus been undermined, that are more troubling. In Winters, supra, 171 Cal.App.2d Supp. 876, and in Beasley,supra, 5 Cal.App.3d 617, the reviewing courts had reporter's transcripts showing the trial court's reasons for dismissing charges. Yet neither gave any indication that the transcript could substitute for the minutes, why this was so, or the need to adopt what was in effect a per se rule of reversal.
 All of this might be academic if Winters and Beasley were the sole authorities extant. However, whatever their logical faults or analytic defects, Winters and Beasley were put beyond reach when they were twice ratified by *Page 1334 our Supreme Court in the unanimous decisions in Orin and Romero.[9] In those decisions, by stating that the rule of section 1385 is both "mandatory" and beyond the power of "appellate courts" to "disregard," our Supreme Court appears to have precluded harmless error analysis. That conclusion is fortified — indeed, compelled — when both decisions stated that no attention could be paid to the existence of a reporter's transcript. (Romero, supra, 13 Cal.4th 497, 531; Orin, supra,13 Cal.3d 937, 944, both quoting Beasley, supra, 5 Cal.App.3d 617,637.) Whatever the abstract merits, or demerits, of that rule, we must obey it. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450,455 [20 Cal.Rptr. 321, 369 P.2d 937].) Nevertheless, we believe that the rule is illogical in application, and thus ripe for reexamination.
 In addition to the drawbacks to a remand already mentioned, there is another dimension to the problem. Because this is a drug prosecution, it is of particular note that the Health and Safety Code has numerous provisions providing for additional pains and penalties for drug-related offenses, but also providing the court may spare the defendant if it "states on the record its reasons" for doing so.[10] Thus, certain enhancements can only be stricken under section 1385 with the reasons recorded in an order in the minutes, while others — not noticeably less onerous — can be stricken with only a statement of reasons which can be recorded in a reporter's transcript.
 This case illustrates this confusing state of affairs. The manufacturing charge against both defendants had a weight enhancement alleged pursuant to *Page 1335 Health and Safety Code section 11379.8. That statute allows a trial court to strike the additional term of punishment if it "states on the record its reasons." (Health Saf. Code, § 11379.8, subd. (d).) So, if Judge Canepa had proceeded under that provision, a remand would not be necessary. (See fn. 6, ante.) But because she proceeded under section 1385, we must reverse. If there is any rhyme or reason for this state of affairs, it is difficult to discern.
 Having made an extensive review of the statutes, we have discovered that (1) there are a number of instances where additional punishment terms may be stricken or dismissed pursuant to section 1385, which requires the reasons for the dismissal to be entered in the minutes; (2) there are other statutes where additional punishment terms may be stricken or dismissed if the reasons are stated on the record (see fn. 11, post); and (3) there is yet another category of statutes which requires the reasons stated on the record and entered in the minutes.[11]
 The transcript quoted above clearly reflects that Judge Canepa devoted a considerable amount of care to the statement of reasons for her discretionary sentencing choices. The smoothness of the articulation and the absence of the usual hesitations and minor grammatical errors frequently found in sentencing transcripts suggest that her statement may have been written out before hand and read aloud at the sentencing. If this is what happened, section 1385 could perhaps have been satisfied if the statement was simply stapled to a minute order and file stamped. The trial courts of this state are already burdened with *Page 1336 caseload and sentencing complexity. They are confronting a new wave of sentencing remands required by Cunningham v. California (2007) 549 U.S. ___ [166 L.Ed.2d 856, 127 S.Ct. 856]. Further burdens should be avoided if possible. Unfortunately, for us, it is not possible.
 As previously mentioned, the general purpose of the written entry requirement in section 1385 is to sustain public confidence in the prosecution and punishment of crimes; if a court is going to terminate a prosecution, the court must face accountability by leaving a paper trail. (See Romero, supra, 13 Cal.4th 497, 530-531; Orin, supra, 13 Cal.3d 937,944, 947.) If the prosecutor is agreeable to a dismissal, any failure to comply with section 1385 is ignored under the "no harm, no foul" principle, on the theory that in these circumstances there is no corrupt or improper termination of a prosecution. (See Orin, supra, at p. 945, fn. 10.) But if, as here, the prosecutor does not agree, and appeals from the dismissal, there will be a record on appeal that must include a reporter's transcript of certain proceedings (Cal. Rules of Court, rule 8.320(c), (d)), and can be augmented with transcripts of other proceedings (id., rules 8.324(a), (b), 8.340). If the dismissal is reflected by nothing more than a checked box or a bare notation that the dismissal was "in the interests of justice" (see Orin, supra, at p. 941), strict enforcement of section 1385 would be appropriate. But if there is a reporter's transcript evidencing the trial court's reasons for the dismissal, an appellate court will be able to conduct an informed review of the dismissal. A return trip to the trial court for the sole purpose of having the information put into a different form hardly seems worth the resulting cost and delay.
 Although strict compliance with the literal language of section 1385 is demanded by binding precedent, those requirements can, as this case illustrates, become a hidden trap at sentencing, no matter how conscientiously a trial court tries to comply with a sentencing scheme that continues to get more complex in design and convoluted in application. The Supreme Court has stated that "Apparently the Legislature believed this requirement would sufficiently protect the interests of the public." (People v. Superior Court (Howard), supra, 69 Cal.2d 491, 496, fn. 3.) We respectfully submit that, in this age when court proceedings of any consequence are almost always reported, those interests may be equally well served by relaxing the requirement of "an order entered upon the minutes." We therefore suggest that this aspect of Orin and Romero
might be relaxed to permit consideration of a reporter's transcript to determine if noncompliance with the requirements of section 1385 may be analyzed in conformity with section 13 of article VI of the California Constitution. Or perhaps the Legislature may wish to take up this statutory issue and bring a greater measure of uniformity to this important subject. Meanwhile, our hands are tied. *Page 1337 
 DISPOSITION The orders purportedly striking the additional terms of imprisonment pursuant to section 1385 are reversed.
 Haerle, Acting P. J., and Lambden, J., concurred.
REVIEW GRANTED*
[1] This search was undertaken pursuant to a warrant.
[2] All subsequent dates are to the calendar year 2006.
[3] Bonnetta's form is dated July 20, Wilen's six days later.
[4] By this time the prosecutor had filed a second "sentencing brief," this one directed at Wilen. The prosecutor's sentencing recommendations were identical for both Bonnetta and Wilen — each should receive a total term of 17 years.
[5] The district attorney purports to appeal "from the sentence." Although an appeal by the People from a sentence is warranted only when the sentence is not authorized (Pen. Code, § 1238, subd. (a)(10)), appeal from orders striking the enhancements and/or reducing the punishment is clearly proper. (Id., subd. (a)(1), (6); People v. Jordan (1986)42 Cal.3d 308, 312, fn. 2 [228 Cal.Rptr. 197, 721 P.2d 79]; People v.Burke (1956) 47 Cal.2d 45, 53 [301 P.2d 241]; People v. McClaurin (2006)137 Cal.App.4th 241, 247-248 [39 Cal.Rptr.3d 887]; People v.Jackson (1991) 1 Cal.App.4th 697, 700-701 [2 Cal.Rptr.2d 308].) Accordingly, we construe the district attorney's notice to take a valid appeal from the orders striking the enhancements against Bonnetta and Wilen. (Cal. Rules of Court, rule 8.100(a)(2).)
 In his brief, the district attorney argues that the orders are also appealable because they impose "unlawful" sentences. For the reasons set out in footnote 7, post, we do not accept this as an additional, independent basis for appeal.
[6] We acknowledge that Judge Canepa cited both Health and Safety Code section 11379.8 and Penal Code section 1385 when she sentenced Bonnetta ("The Court will strike the quantity enhancement pursuant to 11379.8(a)(1). . . . I am striking the additional punishment, pursuant to 1385, in that matter."), thus opening the possibility that this ruling could be upheld here if analyzed under the former statute. Although this construction is tempting, because our institutional inclination is against reversals, we will resist the temptation. Health and Safety Code section 11379.8 was not mentioned when Wilen was sentenced, and a fair reading of the entirety of Judge Canepa's statements of reasons at both sentencings is that she meant to base all of her rulings on section 1385.
[7] Another exception is when a trial court imposes an "unauthorized sentence," but this concept has a very distinct and narrow meaning: "a sentence is generally `unauthorized' where it could not lawfully be imposed under any circumstance in the particular case." (People v.Scott, supra, 9 Cal.4th 331, 354.) This exception is inapplicable because at no point in his brief does the district attorney come near to arguing that, as a matter of law, there were no conceivable circumstances in which Judge Canepa could properly have stricken the additional enhancement terms; in other words, that striking the terms would have been unauthorized at any time and for any reason. To cite the most obvious examples, if the district attorney had not opposed the striking, or had even moved on his own to strike the terms, this would not have resulted in an unauthorized sentence. Because the sentences are not inherently defective, it follows that they are not "unauthorized." It is for that reason that we have not treated the appeal as one from an "unlawful sentence" within the meaning of Penal Code section 1238, subdivision (a)(10). (See fn. 5, ante.)
[8] Counsel for Wilen states that a remand would be "a fruitless ministerial exercise."
[9] Both Orin and Romero were decided without dissent: Orin was a unanimous opinion, while in Romero one justice concurred separately.
[10] See Health and Safety Code, sections 11353.1 (additional prison term for providing heroin, cocaine, or cocaine base near church or school), 11353.4 (additional prison term for subsequent conviction of providing heroin, cocaine, or cocaine base near church or school), 11353.6 (additional prison term for providing drugs near schools), 11370.4 (additional prison term based on weight of heroin, cocaine, or cocaine base), 11379.8 (additional prison term based on volume or weight of controlled substance) 11380.1 (additional prison term for adult inducing minor to provide drugs near church or school), 11380.7 (additional prison term for trafficking near treatment center or homeless shelter).
 Similar provisions, not related to drugs, are in various codes. (Health Saf. Code, § 131130 (fine for disobeying order not to sell tainted product); Pen. Code, §§ 273a (specified conditions of probation for conviction of causing physical pain or mental suffering to child), 273d (specified conditions of probation for conviction of inflicting cruel or inhuman corporal punishment to child), 273.5 (mandatory imprisonment for corporal punishment of spouse, cohabitant, or parent of child), 302 (community service probation requirement for disturbing church service), 422.75 (additional prison term for hate crime), 667.16 (additional prison term for defrauding natural disaster victim), 1001.90 (waiver of diversion restitution fee), 1202.4 (victim restitution), 1203.055 (restitutions for crimes against occupants of public transit or vehicles), 1203.066 (prohibition of probation for crimes against children), 1203.097 (fee payment as probation condition for domestic violence), 1210.1 (probation for non-violent drug possession); Veh. Code, § 23558 (additional prison time for drunk driving causing death or injury); Welf. Inst. Code, § 727 (prohibition of probation for ward possessing drugs for sale).)
[11] E.g., Penal Code, sections 186.22, subdivision (g) (court may strike additional punishment for criminal gang activity crimes "if the court specifies on the record and enters into the minutes the circumstances"), former section 290, subdivision (g)(4) (court may grant probation to sex offender who fails to register only when "the court shall specify on the record and shall enter into the minutes the circumstances indicating that the interests of justice would best be served . . ."), 463, subdivision (a) (court can reduce or eliminate mandatory jail time as condition of probation for looting or committing petty theft during state of emergency for reasons the court "specifies on the record and enters into the minutes"), 626.9, subdivision (g)(4) (court cannot grant probation for having gun in a school zone unless "the court shall specify on the record and shall enter into the minutes the circumstances indicating that the interests of justice would best be served"), 1203, subdivision (f) (court cannot grant probation for specified offenses unless "the court shall specify on the record and shall enter into the minutes the circumstances indicating that the interests of justice would best be served"), 12021.1, subdivision (d) (court can suspend additional enhancement term for crimes committed by past convicted felon in possession of a firearm for reasons the court "specifies] on the record and shall enter on the minutes"), 12022, subdivision (f) (court can suspend additional enhancement term for crimes committed while armed with a firearm for reasons the court "specifies on the record and enters into the minutes"), 12025, subdivision (e) (minimum term for carrying concealed firearm must be imposed unless the court "shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served"), 12031, subdivision (a)(6)(B) (minimum term for discharging firearm must be imposed unless "the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served").
* `Reprinted without change in the Review Granted Opinions Pamphlet to permit tracking pending review and disposition by the Supreme Court. *Page 1338